JEFFERSON AMUSEMENT COMPANY,
Inc., Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

Port Arthur College, Port Arthur,
Texas, Intervenor,

Smith Radio Company, Intervenor.

No. 12471.

United States Court of Appeals
District of Columbia Circuit.

Argued May 27, 1955.

Decided Sept. 8, 1955.

Mr. John Erle Stephen, Houston, Tex., with whom Mr. W. Ervin James, Montgomery, Ala., was on the brief, for appellant.

Mr. J. Smith Henley, Asst. Gen. Counsel, Federal Communications Commission, with whom Messrs. Warren E. Baker, Gen. Counsel, and Edward F. Kenehan, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. John P. Southmayd, Washington, D. C., with whom Messrs. Charles V. Wayland, Charles F. Duvall and Ben C. Fisher, Washington, D. C., were on the brief, for intervenor Port Arthur College.

Messrs. Maurice M. Jansky, Washington, D. C., and Joe B. Carrigan, Wichita

Falls, Tex., filed a brief on behalf of intervenor Smith Radio Co.

Before EDGERTON, FAHY and BASTIAN, Circuit Judges.

FAHY, Circuit Judge.

The appeal is from an order of the Federal Communications Commission of September 29, 1954, released October 4, 1954, dismissing, on the basis of Section 1.363(a) of the Commission's Rules and Regulations, appellant's application for a television station on Channel 4 in Port Arthur, Texas. Section 1.363(a) provides:

> "Repetitious applications. — (a) Where an applicant has been afforded an opportunity to be heard with respect to a particular application for new station * * * and the Commission has, after hearing or default, denied the application or dismissed it with prejudice, the Commission will not consider a like application involving service of the same kind to the same area by the same applicant, or by his successor or assignee, or on behalf of or for the benefit of the original parties in interest, until after the lapse of 12 months from the effective date of the Commission's order. The Commission may, for good cause shown, waive the requirements of this rule."

When appellant Jefferson filed its application on November 24, 1952, three other applications for the same channel in the same area were pending before the Commission. The first of these had been filed by the Lufkin Amusement Company in 1948, but the general freeze on television applications prevented it from being considered until 1952. After the freeze was lifted, intervenor Port Arthur College also applied for Channel 4 in the Beaumont-Port Arthur area. On July 11, 1952, the Commission designated these two applications for a consolidated hearing. A few days later intervenor Smith Radio Company filed a third conflicting application. This was also consolidated in the Channel 4 proceeding, by order of November 26, 1952, and a hearing was scheduled for December 15, 1952. On December 5, 1952, however, Lufkin requested that its application be dismissed without prejudice. Since it did not establish to the satisfaction of the Motions Commissioner that there was "good cause" within the meaning of Section 1.366 [1] to warrant dismissal without prejudice, its application was dismissed with prejudice, on December 16, 1952.

Beginning December 10, 1952, several petitions were aimed at Jefferson's application by Port Arthur College and Smith, including petitions alleging that the relationship between Jefferson and Lufkin required dismissal of Jefferson under Section 1.363(a).[2] On December 12, 1952, the hearing in the Channel 4 proceeding was suspended so that it could be determined whether Jefferson's application should be dismissed or consolidated for hearing with the Port Arthur College and Smith applications. This suspension has remained in effect.[3] On April 22, 1953, the Commission dismissed Jefferson's application under Section 1.363(a). Although the dismissal was rescinded upon the filing of a petition for rehearing, further proceedings and reconsideration eventuated in the new dismissal order of October 4, 1954, now on appeal.

The Commission found substantial though not complete identity of interest between Lufkin and Jefferson. It also found that Lufkin enjoyed "negative control" over Jefferson by virtue of Lufkin's 50% stock ownership in a corporation which in turn owned 50% of Jefferson's outstanding voting stock. The Commis-

---

1. This Section provides that "requests to dismiss an application without prejudice after it has been designated for hearing * * * will be granted only for good cause."

2. The § 1.363(a) petition of Port Arthur College was filed January 5, 1953, and that of Smith two days later.

3. Except that the hearing was opened for engineering testimony from Port Arthur College and Smith.

sion concluded that Jefferson had filed its application "on behalf of or for the benefit of" Lufkin within the meaning of Section 1.363(a). The Commission also found that both applications concern "service of the same kind to the same area," and that no "good cause" existed which would justify waiving the requirements of Section 1.363(a).

We assume the correctness of these findings and conclusions of the Commission. Nevertheless, Jefferson's application could not be dismissed under Section 1.363(a) unless, after affording Lufkin an opportunity to be heard, the Commission had dismissed its application after hearing or default. There was no hearing. The Commission does not contend otherwise. It says Lufkin defaulted. It says that this default consisted in an "abandonment" by Lufkin of its application, evidenced by the filing of the petition for dismissal, the statement in the petition that Lufkin "did not desire to prosecute its application at this time," and Lufkin's failure to appeal the dismissal or to take any other steps evincing an intent to participate further in the Channel 4 proceedings. We think this is an erroneous interpretation of the term "default" as it is used in Section 1.363(a).

In ordinary legal terminology default and voluntary non-suit do not mean the same thing. The latter signifies an affirmative abandonment of or withdrawal from a proceeding, while the former denotes a failure to appear or plead as required by law, rule of court, or, at times, as required by order of court. Compare Rule 41, Fed.Rules Civ.Proc., 28 U.S. C.A., on voluntary and involuntary dismissals, with Rule 55, Fed.Rules Civ. Proc., 28 U.S.C.A., on defaults. And see Cooper v. Crisco, 201 N.C. 739, 742, 161 S.E. 310, 312; 5 Moore, Federal Practice 1036–38; Walker v. Spencer, 10 Cir., 123 F.2d 347, 350. The "abandonment" found in this case by the Commission seems clearly to fall within the common definition of voluntary non-suit rather than that of default. True, we are here interpreting the Rules and Regulations of the Commission rather than the Federal Rules of Civil Procedure. But both are rules of practice and procedure where expressions such as "default" are likely to be used in similar fashion. The term should ordinarily be given its ordinary meaning. A practitioner or applicant before the Commission would hardly understand "default" in Section 1.363(a) to include the dismissal of an application with prejudice on a petition to dismiss without prejudice unless the Commission had previously announced such an interpretation. The Jefferson application had been accepted for filing prior to Lufkin's petition to dismiss. Even though it was on behalf of or for the benefit of the Lufkin parties in interest, and involved services of the same kind to the same area, all as the Commission found, neither Jefferson nor the attorney filing its application, who was at that time also the attorney for Lufkin, could reasonably be expected to think from the wording of Section 1.-363(a), or otherwise, that the parties in interest were defaulting rather than proceeding on the basis of Jefferson's application. The language of Section 1.363 (a) indicates "default" was there used in its ordinary meaning. The Section speaks of an applicant who has been afforded an opportunity to be heard and whose application is denied or dismissed with prejudice after hearing or default. The language warns that the applicant must appear at the time the hearing is designated or suffer default, in which event it is as if he were heard and failed; that is, his application may be dismissed with prejudice. This is not what occurred. Before the designated date for hearing arrived Lufkin petitioned in effect to withdraw without prejudice. Jefferson had filed. The hearing was suspended and thereafter Lufkin's application was dismissed with prejudice. It was dismissed on its own petition, though it had asked dismissal without prejudice. Perhaps an applicant who seeks voluntarily to withdraw should be in the same situation as a defaulter, even though he steps aside for another representing the

same interests; but, fairly read, Section 1.363(a) does not say that, and its meaning should not be extended beyond its fair reading. For doubts should be resolved in favor of disposition of cases on their merits rather than by default. Erick Rios Bridoux v. Eastern Air Lines, 93 U.S.App.D.C. 369, 372, 214 F.2d 207, 210, and cases cited; Assmann v. Fleming, 8 Cir., 159 F.2d 332, 336. See also, Hovey v. Elliott, 167 U.S. 409, 414, 17 S.Ct. 841, 42 L.Ed. 215. For this reason, alone, the decision and order appealed from will be set aside as based upon a legally erroneous application of Section 1.363(a) of the Rules and Regulations of the Commission. We need not consider other questions raised by the appeal.

The order of the Commission will be reversed and the case remanded to the Commission for further proceedings not inconsistent with this opinion.

It is so ordered.