**SANGAMON VALLEY TELEVISION CORPORATION, Petitioner**

**v.**

**UNITED STATES of America and Federal Communications Commission, Respondents**

**American Broadcasting-Paramount Theatres, Inc., WMAY–TV, Inc., Signal Hill Telecasting Corporation, and Plains Television Corporation, Intervenors.**

**No. 13992.**

United States Court of Appeals District of Columbia Circuit.

Argued March 19, 1959.

Decided May 8, 1959.

Mr. D. M. Patrick, Washington, D. C., with whom Messrs. Lester Cohen and Stanley S. Harris, Washington, D. C., were on the brief, for petitioner.

Mr. Robert A. Bicks, First Assistant, Antitrust Division, Department of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Henry Geller, Attorney, Department of Justice, was on the brief, for respondent United States of America. Mr. Daniel M. Friedman, Attorney, Department of Justice, also entered an appearance for respondent United States of America.

Mr. Max D. Paglin, Assistant General Counsel, Federal Communications Commission, for respondent Federal Communications Commission. Messrs. John L. FitzGerald, General Counsel, Federal Communications Commission, and Edward W. Hautanen, Counsel, Federal Communications Commission, were on the brief for respondent Federal Communications Commission.

Mr. Marcus Cohn, Washington, D. C., with whom Mr. Paul Dobin, Washington, D. C., was on the brief, for intervenor WMAY-TV, Inc. Mr. Stanley S. Neustadt, Washington, D. C., also entered an appearance for intervenor WMAY-TV, Inc.

Mr. Monroe Oppenheimer, Washington, D. C., with whom Messrs. Abraham J. Harris and James H. Heller, Washington, D. C., were on the brief, for intervenor Signal Hill Telecasting Corporation.

Messrs. James A. McKenna, Jr., and Vernon L. Wilkinson, Washington, D. C., were on the briefs for intervenors American Broadcasting-Paramount Theatres, Inc., and Plains Television Corporation.

Before EDGERTON, FAHY, and BASTIAN, Circuit Judges.

EDGERTON, Circuit Judge.

When this case was here before, we said only:

"Petitioner seeks review of a rulemaking decision of the Federal Communications Commission resulting in amendment of the Table of Television Channel Assignment. The amendment assigned VHF Channel 2, Springfield, Illinois, to St. Louis, Missouri, and Terre Haute, Indiana, accompanied with the assignment of UHF Channels 26 and 36 to Springfield.

"Petitioner, applicant for Channel 2 at Springfield, attacks the decision as illegal because inconsistent with Section 307(b) of the Communications Act.[1]

"We are unable to sustain this attack. Upon the basis of a full hearing the Commission weighed the various factors involved and reached a reasoned decision within its competence. We find nothing arbitrary, capricious or otherwise illegal in the decision, and it accordingly is Affirmed."[2]

Sangamon Valley Television Corporation petitioned the Supreme Court for certiorari. The government's brief in opposition concluded:

"We believe it proper, however, to call the Court's attention to certain testimony given before the Subcommittee of Legislative Oversight of the House Committee on Interstate and Foreign Commerce on May 22, 26, and 28, 1958, and June 9, 10, and

---

1. "In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same." 48 Stat. 1083 (1934), as amended, 47 U.S.C.A. § 307(b).

2. 103 U.S.App.D.C. 113–114, 255 F.2d 191–192.

11, 1958, subsequent to the decision by the court of appeals affirming the Commission's order. The testimony indicates that after the rule-making proceeding here had been initiated by Notice of Proposed Rulemaking, and while it was under consideration by the Commission, representatives of the St. Louis operator of a UHF station who was interested in having a new VHF channel assigned to St. Louis, and representatives of the petitioner and the other applicant for VHF Channel 2 in Springfield, who were interested in retaining that channel in Springfield, made *ex parte* presentations with respect to merits of the rule-making proceeding to various members of the Commission.

"These matters were not presented to the court below and are not presented by the petition. For this reason, the respondents do not and would not regard denial of certiorari as foreclosing appropriate consideration thereof by the court of appeals." (pp. 7–8)

In granting Sangamon's petition the Supreme Court said:

"In view of the representations in the Solicitor General's brief on pages 7 and 8, concerning testimony given before the Subcommittee of Legislative Oversight of the House Committee on Interstate and Foreign Commerce subsequent to the decision by the Court of Appeals in this case, the judgment of the Court of Appeals is vacated and the case is remanded to the Court of Appeals for such action as it may deem appropriate." 358 U.S. 49–50, 79 S.Ct. 94, 3 L.Ed.2d 47.

While the proceeding involved here was pending before the Commission it gave notice to the parties, on October 12, 1956, that

"Any interested person who is of the view that the proposals herein should not be adopted, or should not be adopted in the form set forth herein, may file with the Commission on or before November 15, 1956, written data, views, or arguments setting forth his comments. Comments in support of the proposals may also be filed on or before the same date. Comments or briefs in reply to such original comments as may be submitted should be filed within 15 days from the last day for filing said original comments or briefs. *No additional comments may be filed unless (1) specifically requested by the Commission or (2) good cause for filing such additional comments is established.* The Commission will consider all such additional comments submitted before taking further action in this matter, and if any comments appear to warrant the holding of a hearing, oral argument, or demonstration, notice of the time and place of such hearing, oral argument or demonstration will be given." (Emphasis added.)

Several parties filed comments. The Commission extended the time for filing reply comments until December 28, 1956. The parties, including intervenor Signal Hill Telecasting Corporation, filed timely reply comments.

On March 1, 1957, the Commission issued the order under review. It shifted VHF Channel 2 from Springfield to St. Louis, shifted UHF Channels 26 and 36 to Springfield, and modified Signal Hill's outstanding authorization for Channel 36 in St. Louis to permit temporary operation on Channel 2 subject to certain conditions.

Harry Tenenbaum, president of intervenor Signal Hill, admitted to the Legislative Oversight Subcommittee that while the proceeding before the Commission was pending he spoke to its members individually "in privacy in their offices, not while they were sitting in a body as the Commission", of his desire to have Channel 2; "knowing, of course, or expecting, that if Channel 2 went to St. Louis [he] would have good opportunity to get it." He was "in all the Commissioners' offices" and went "from Commissioner to Commissioner". He "probably

discussed" with every Commissioner his desire to have Channel 2. He testified that he had every Commissioner at one time or another as his luncheon guest, and that he gave turkeys to every Commissioner in 1955 and in 1956.

Finally, on February 20, 1957, seven weeks after the cut-off date, as extended, for filing reply comments and ten days before the Commission decided the case, Tenenbaum sent each Commissioner a letter in which he contended and tried to prove that "Channel 2, based in St. Louis, would reach 166,700 more homes in the state of Illinois than if it were based in Springfield, Illinois." [3] These letters did not go into the public record. The parties who were opposing the transfer of Channel 2 from Springfield to St. Louis could not question Tenenbaum's contention, since they did not know he was making it. Its importance was great and perhaps critical, for the principal contention of the opposing parties was that the transfer would deprive Illinois of the "fair, efficient, and equitable distribution of radio service" to which the Communications Act entitles each state and community.[4]

 Interested attempts "to influence any member of the Commission * * * except by the recognized and public processes" go "to the very core of the Commission's quasi-judicial powers * * *." Massachusetts Bay Telecasters, Inc., v. Federal Communications Commission, 104 U.S.App.D.C. 226, 261 F.2d 55, 66, 67. That case involved licensing, not rule-making. Ordinarily allocation of TV channels among communities is a matter of rule-making, governed by § 4 of the Administrative Procedure Act, 5 U.S.C.A. § 1003, rather than adjudication governed by § 5, 5 U.S.C.A. § 1004.[5] The Commission and the intervenor contend that because the proceeding now on review was "rule-making", ex parte attempts to influence the Commissioners did not invalidate it. The Department of Justice disagrees. On behalf of the United States, the Department urges that whatever the proceeding may be called it involved not only allocation of TV channels among communities but also resolution of conflicting private claims to a valuable privilege, and that basic fairness requires such a proceeding to be carried on in the open. We agree with the Department of Justice. Accordingly the private approaches to the members of the Commission vitiated its action and the proceeding must be reopened.[6]

 We agree also that the Commission proceeding must be reopened for another reason. Agency action that substantially and prejudicially violates the agency's rules cannot stand.[7] At the time of this proceeding the Commission

---

3. On February 4, 1957, Gordon Sherman, President of WMAY–TV, Inc., sent the then Chairman of the Commission a telegram urging the Commission to keep Channel 2 in Springfield. Nelson Howard, Mayor of Springfield, "talked to a number of the Commissioners" in behalf of Springfield applicants.

4. Note 1, supra.

5. See also § 409 of the Communications Act as amended, 47 U.S.C.A. § 409(c).

6. The Van Curler case is not to the contrary. We there held that ex parte "calls and conversations * * * in regard to the nation-wide intermixture problem, concerning which the Commission was seeking all sorts of advice and information preparatory to setting up a general nation-wide rule-making proceeding to deal with intermixture" did not vitiate an assignment of a particular channel. We found "nothing improper or erroneous in the Commission's consideration of these interviews as depicted in this record." Van Curler Broadcasting Corp. v. United States, 98 U.S.App.D.C. 432, 435, 236 F.2d 727, 730. The Commission's opinion denying the petitioner's request to reopen the record shows that the Commission did not consider these interviews in connection with the particular channel assignment that was before us for review.

7. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L. Ed. 681; Service v. Dulles, 354 U.S. 363, 372–373, 77 S.Ct. 1152, 1 L.Ed.2d 1403; Jefferson Amusement Co. v. Federal Communications Commission, 96 U.S.App. D.C. 375, 226 F.2d 277; American Broadcasting Co. v. Federal Communications Commission, 85 U.S.App.D.C. 343, 348–349, 179 F.2d 437, 442–443.

had no general regulations governing all rule-making, but when it proposed an allocation of TV channels to particular communities it was its usual practice, followed in this instance, to prescribe a cut-off date before which "Any interested person * * * may file with the Commission * * * written data, views, or arguments setting forth his comments" favoring or opposing the plan; a cut-off date for "comments or briefs in reply"; and that "No additional comments may be filed" without a request from the Commission or a showing of good cause.[8] By plain implication, this rule forbade submitting material to the Commission's members after the time for filing it with the Commission had gone by. The rule cannot be interpreted to permit parties to make off the record contentions that it forbids them to make on the record.[9]

In substantial agreement with the recommendation of the Department of Justice, the Commission's Report and Order of March 1, 1957 is vacated and the case is remanded to the Commission with instructions to hold, with the aid of a specially appointed hearing examiner, an evidential hearing to determine the nature and source of all *ex parte* pleas and other approaches that were made to Commissioners while the former proceeding was pending, and any other factors that might be thought to require either disqualification of some Commissioners from participating in the reopened proceeding or disqualification of some parties from receiving any award that may ultimately result. All parties to the former proceeding and to the present review may on request participate fully in the evidential hearing. The Commission is instructed to report its progress to this court within 60 days, together with any recommendations it is then

able to make. In the discretion of the Commission existing services may be maintained, and the court retains jurisdiction of this proceeding, pending further order of the court.

Vacated and remanded.

---

**8.** This practice has since been codified in the Commission's Procedural Practices and Rules adopted December 11, 1957, 47 C.F.R. § 1.213 (1958).

**9.** The Commission's present regulations make explicit what was formerly implicit: "The Commission will consider all rel-

evant comments and material *of record* before taking final action in a rule making proceeding and will issue a decision incorporating its finding and a brief statement of the reasons therefor." (Emphasis supplied.) 47 C.F.R. § 1.218 (1958).