**RAZ INLAND NAVIGATION CO., INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondent.**

**No. 78–1694.**

United States Court of Appeals, Ninth Circuit.

Submitted July 3, 1980.

Decided Aug. 8, 1980.

---

* The Honorable Marion J. Callister, United States District Judge for the District of Idaho, sitting by designation.

John D. Ryan, Thomas Yi Higashi, Portland, Or., for petitioner.

Mark L. Evans, Dept. of Justice, Peter L. de la Cruz, Paul M. Donovan, Kathleen M. Dollar, Washington, D.C., for respondent.

Before SNEED and NELSON, Circuit Judges, and GRAY,* District Judge.

NELSON, Circuit Judge:

Petitioner Raz Inland Navigation Company, Inc. [Raz], seeks review of an order of the Interstate Commerce Commission granting applications by five water carriers[1] to operate as common carriers over routes currently served by Raz. Petitioner challenges the Commission's final decision on the ground that it was tainted by *ex parte* communications between A. Daniel O'Neal, Chairman of the Commission, and representatives of the Pacific Northwest Waterways Association [PNWA]. We find that the communications amounted to no more than a status report. We therefore dismiss the petition for review and affirm the Commission's order.

## Background

Petitioner Raz Inland Navigation Company, Inc., holds authority from the Interstate Commerce Commission [Commission] to operate as a common carrier by water between points on the Columbia and Snake Rivers in Washington, Idaho and Oregon. In February, 1977, a Commission employee review board, over the protests of Raz, recommended that the Commission grant applications for certificates of public convenience and necessity made by five other water carriers,[2] four of whom are intervenors in this case. On April 18, 1977, Raz filed petitions for reconsideration and for reopening for further oral hearing. By order served February 3, 1978, the Commission affirmed in substantial part the employee board's recommended decision. On

---

* The Honorable William P. Gray, United States District Judge, Central District of California, sitting by designation.

1. Four of the water carriers are intervenors in this case, namely Western Transportation Company, Shaver Transportation Co., Knappton Towboat Company, and The Mirene Company. Columbia Common Carriers, Inc., was granted a certificate of public convenience and necessity in the proceedings below, but has not moved to intervene in this matter.

2. The applications were made under former § 909 of the Interstate Commerce Act. The Act was recently revised, codified and enacted without substantive change as Subtitle IV of Title 49, United States Code. Interstate Commerce Act, Pub.L.No.95–473, 92 Stat. 1409 (codified at 49 U.S.C. §§ 10101–11916 (1978)). Former § 909 is now § 10922.

that same date, the Commission rejected Raz's petitions on the ground that they were untimely filed.

On February 17, 1978, A. Daniel O'Neal, Chairman of the Commission, stayed the effective date of the February 3 order until March 17, 1978, in order to give the Commission time to consider the previously rejected petitions for reconsideration. On March 16, 1978, the Commission denied the petitions on the merits and also denied the request for further hearing on the ground that the Commission's prior orders were in accordance with the evidence and the applicable law.

On March 31, 1978, Raz filed with this court its petition for review of the March order and also requested a stay of the order pending judicial review. By order entered the same day, this Court declined to grant interim relief to Raz. Subsequently, Raz filed a supplemental motion for stay on the ground that Chairman O'Neal had engaged in *ex parte* communications with members of the Pacific Northwest Waterways Association at a meeting held in the Chairman's offices on March 8, 1978, after the Chairman granted the stay but before the final adjudication on the merits. By order entered April 26, 1978, we denied Raz's supplemental motion for stay.

We now review the Commission's order granting navigation rights to the five water carriers pursuant to Raz's petition for review filed March 31, 1978.

### Analysis

Judicial review of the Commission's action in this case is governed by section 10 of the Administrative Procedure Act [APA], 5 U.S.C. § 706(2)(D). Under this section, this court shall:

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(D) without observance of procedure required by law.

*Id.*

Raz alleges that Chairman O'Neal engaged in *ex parte* contacts in contravention of the procedures required by the APA. *See* 5 U.S.C. §§ 551, 557(d)(1). Raz asserts that this court therefore should hold unlawful the Commission's March 16 order. For the reasons given below we decline to do so.

■ The APA contains a broad proscription of *ex parte* contacts in administrative proceedings.[3] An *ex parte* communication means "an oral or written communication not on the public record with respect to which reasonable prior notice to all parties is not given but it shall not include requests for status reports on any matter or proceeding covered by this subchapter." 5 U.S.C. § 551(14). Congress enacted the provisions prohibiting *ex parte* communications to ensure that "agency decisions required to be made on a public record are not influenced by private, off-the-record communications from those personally interested in the outcome." H.R.Rep.No.94–880, 94th Cong., 2d Sess. 3, *reprinted in* 1976 U.S.Code Cong. & Admin.News, pp. 2183, 2184. Congress recognized, however, that not all communications between agency decision-makers and interested parties would contravene the purposes of the proscription of *ex parte* communications. Excluded from the proscribed communications were those contacts that do not affect the way a given case is decided. *Id.* at 2202. Communications that

---

3. As codified in 5 U.S.C. § 557(d)(1), the APA provides that

(d)(1) In any agency proceeding which is subject to subsection (a) of this section, except to the extent required for the disposition of *ex parte* matters as authorized by law—
(A) no interested person outside the agency shall make or knowingly cause to be made to any member of the body comprising the agency, administrative law judge, or other employee who is or may reasonably be expected to be involved in the deci-

sional process of the proceeding, an *ex parte* communication relevant to the merits of the proceeding;
(B) no member of the body comprising the agency, administrative law judge, or other employee who is or may reasonably be expected to be involved in the decisional process of the proceeding, shall make or knowingly cause to be made to any interested person outside the agency an *ex parte* communication relevant to the merits of the proceeding.

amount only to a request for, or presentation of, a status report were specifically exempted from the prohibition of *ex parte* contacts. 5 U.S.C. § 551(14).

■ The major issue before this court, then, is whether the communication between Chairman O'Neal and the representatives of the PNWA is of the kind Congress intended to include within the term "status report." Evidence of what transpired at the meeting between the PNWA and the Chairman is before this court in the form of three affidavits. The first is that of Chairman O'Neal and is based upon his review of a tape recording of the meeting. The relevant portions of that statement are set out below.

> During the course of the meeting, someone inquired as to the status of the five proceedings.

> After I stated that I was not sure of their status, someone stated that an existing carrier had gone to court and obtained an injunction enjoining the Commission from issuing certificates of public convenience and necessity to the five applicants.

> I responded by stating that as far as the Commission was concerned, the matter was administratively final and that there were remedies available in court.

> Someone then asked if the injunction would cause the Commission to reopen the proceedings.

> I responded by stating that we would not reopen the proceedings unless the court remanded the case to the Commission. I further stated that, while the courts give a good deal of deference to the regulatory agencies, the fact that the court issued a stay was probably not a good sign as far as the applicants were concerned.

> Someone stated that they (presumably the port operators) were very curious about the situation, particularly in view of the prospect of competition, rates and availability of service.

> I stated that I did not want to get into a discussion of the proceedings, and referred to my 1977 meeting with the Pacific Northwest Waterways Association.

The affidavit of Stephen Lindstrom, a municipal port authority employee in the northwest, essentially supports Chairman O'Neal's version of the exchange.

On March 8, 1978, about fifteen members of the PNWA delegation met with A. Daniel O'Neal, Chairman of the Interstate Commerce Commission, in his offices. General conversation ensued regarding railroads and other matters until Chairman O'Neal was asked if he knew anything about an injunction to stay implementation of authority recently granted to five carriers by the ICC for general cargo and container operations on the upper Columbia system. Chairman O'Neal was also asked after clarifying the statements from Carl Halvorson, PNWA President, and myself, if that legal action might be cause for him to reopen the matter and hold oral hearings. Chairman O'Neal responded, as best I can recall, that as far as he was concerned the matter is administratively final. He then went on to say that they (the ICC) wouldn't re-open the matter unless the courts told them to. Chairman O'Neal said that he really didn't want to talk about the matter too much because of its sensitivity. The discussion then turned to other matters and we departed Chairman O'Neal's offices after a visit of about an hour.

A third affidavit, that of Anthony Schouwenaars, another municipal port authority employee, seems to cast a different light on the conversation. Schouwenaars suggests that Chairman O'Neal assured the PNWA that there would be no additional agency action and that Raz would be unsuccessful in obtaining the relief sought. However, we do not view Schouwenaars' affidavit as necessarily inconsistent with the accounts given by the Chairman and Lindstrom. Chairman O'Neal mistakenly believed that the Commission proceedings were administratively final and, as of March 8, 1978, were under judicial review. Thus as far as Chairman O'Neal was concerned the Commission would take no further action unless

the court chose to remand after judicial review.[4] When viewed in this context, Schouwenaars' affidavit simply suggests that because the Chairman mistakenly believed the administrative action to be final, there would be no oral hearing and Raz would not get the relief it sought. This reading is also consistent with the Lindstrom affidavit.

Thus our review of the affidavits does not lead to the conclusion that the communications under review were outside the permissible parameters of 5 U.S.C. § 557(d)(1). The Chairman's remarks amount to no more than a clarification, albeit incorrect, of what he believed to be the status of proceedings as of March 8, 1978. Under these facts remand to the Commission for a full evidentiary hearing is not required. Prior case law does not compel a contrary conclusion. *See, e. g., National Small Shipments, etc. v. ICC*, 590 F.2d 345 (D.C.Cir.1978); *U.S. Lines v. Federal Maritime Commission*, 584 F.2d 519 (D.C.Cir.1978); *Home Box Office v. F.C.C.*, 567 F.2d 9 (D.C.Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977); *Sangamon Valley Television Corp. v. United States*, 269 F.2d 221 (D.C.Cir.1959). In each of these cases wrongful *ex parte* contact between parties to rulemaking proceedings and members of the Commission was clearly shown. No such showing is present here. The challenged contact amounts to *no more than a discussion of the status of* the proceedings and it is clear that Congress intended to exempt such discussions from the prohibition on *ex parte* communications. In this circumstance, the Commission has not violated the procedures required by the APA.

Because we conclude that no wrongful *ex parte* contact took place between the Chairman and members of the PNWA, we need not reach the issue whether 5 U.S.C. § 557(d)(1) prohibits *ex parte* contact only if the Chairman in fact participates in the decisional process under review.

4. In its brief, Raz does not challenge the assertions by Chairman O'Neal that he said the matter was administratively final, and that he went on to discuss the judicial review issue. In fact Raz quotes statements by Lindstrom that support the Chairman's affidavit on these matters.

The Commission's order granting navigation rights to the five water carriers is affirmed.