# Contacts Between the Office of Management and Budget and Executive Agencies Under Executive Order No. 12,291

Agencies are not precluded from receiving, in the context of informal rulemaking, views or information outside the usual channels for public comment, notwithstanding the *ex parte* contacts doctrine developed in the D.C. Circuit, and the Office of Management and Budget (OMB) is under no duty to refrain from communicating with rulemaking agencies pursuant to its implementation of Executive Order No. 12,291.

The Administrative Procedure Act's provisions for judicial review and public participation in informal rulemaking may be construed to imply an agency obligation to disclose communications from outside the agency, including communications which occur after the publication of proposed rulemaking. Therefore, in order to reduce the danger of reversal, such communication should be included in the administrative file and the record for judicial review, at least to the extent that they are factual as opposed to deliberative in nature.

A rulemaking agency need not disclose substantive communications from OMB or other federal agencies which form part of its deliberative process; however, the deliberative process does not extend to the legal or policy views of persons outside of executive or independent agencies, even when they are transmitted by an agency acting as a conduit for the third party.

April 24, 1981

MEMORANDUM OPINION FOR THE DIRECTOR,
OFFICE OF MANAGEMENT AND BUDGET

Your Office has requested the views of this Office regarding the legality of contacts which may occur between you and your staff and officials of executive agencies in the implementation of Executive Order No. 12,291, 3 C.F.R. 127 (1982) (Order). The Order generally requires these agencies to maximize the benefits and minimize the costs of regulations promulgated following informal rulemaking proceedings. Your Office is charged with ensuring compliance with these requirements by engaging in prepublication review of proposed and final rules and preliminary and final Regulatory Impact Analyses (RIA). In performing this oversight role, you and your staff will presumably communicate on a regular basis with agency officials regarding the substance of proposed regulations. You might also wish to transmit to these agencies information or arguments received from other federal agencies or from non-federal parties. Some or all of these contacts might be

challenged under the so-called "*ex parte* contacts" doctrine developed in the D.C. Circuit.[1]

We conclude that neither the *ex parte* contacts doctrine nor other generally applicable provisions of law impose any duties on you or your staff to refrain from communicating with rulemaking agencies. The law is uncertain as to whether rulemaking agencies must disclose communications from your Office which occur after publication of a notice of proposed rulemaking. In order to reduce the danger of reversal, we believe that rulemaking agencies should include in the administrative file and the record for judicial review: (1) oral or written information from your Office of a purely factual nature; and (2) oral or written material received from an interested party outside the federal government which influences the views your Office expresses to the agency. Your Office could assist rulemaking agencies in complying with these recommendations by following procedures similar to those described herein.

## I. *Ex Parte* Contacts Doctrine

The D.C. Circuit has thrice addressed the question of *ex parte* contacts in informal rulemaking. In *Home Box Office, Inc.* v. *FCC*, 567 F.2d 9 (D.C. Cir) (*per curiam*), *cert. denied*, 434 U.S. 829 (1977), interested private parties engaged in wide-spread, off-the-record communications with FCC Commissioners and staff regarding a proposed cable television rule. The court condemned the comments on several grounds, including the Due Process Clause, the judicial review requirements of the Administrative Procedure Act (APA), and what the court perceived to be a general need to ensure rationality and fairness in agency decision processes. In a broadly worded dictum, the court stated that such communications would be improper even if the FCC disclosed them in the administrative file in time to allow public comment and judicial review. The court also said that such comments would be permissible prior to publication of a notice of proposed rulemaking. 567 F.2d at 59.

In *Action for Children's Television* v. *FCC*, 564 F.2d 458 (D.C. Cir. 1977), a different panel of the D.C. Circuit refused to apply *Home Box Office* retroactively. In dictum, the panel severely criticized the *Home Box Office* rationale and expressed its view that the doctrine should be

---

[1] *Sangamon Valley Television Corp.* v. *United States*, 269 F.2d 221 (D.C Cir. 1959); *Home Box Office, Inc.* v. *FCC*, 567 F.2d 9 (*per curiam*) (D.C. Cir.), *cert. denied*, 434 U.S. 829 (1977); *Action for Children's Television* v. *FCC*, 564 F.2d 458 (D.C. Cir. 1977); *United States Lines, Inc.* v. *FMC*, 584 F.2d 519 (D.C. Cir. 1978); *Hercules, Inc.* v. *EPA*, 598 F.2d 91 (D.C. Cir. 1978); *National Small Shipments Traffic Conference, Inc.* v. *ICC*, 590 F.2d 345 (D.C. Cir. 1978); *United Steelworkers of America* v. *Marshall*, 647 F.2d 1189 (D.C. Cir. 1980), *cert. denied sub nom. Lead Industries Ass'n* v. *Donovan*, 453 U.S 913 (1981).

While other circuits have not taken a clear position on *ex parte* contacts, the D.C. Circuit cases are particularly significant because so many federal regulatory actions are reviewed there and because, as a practical matter, the D.C. Circuit is often the court of last resort in light of the Supreme Court's limited docket.

limited to a narrow class of cases involving competing private claims to a valuable privilege. *Id.* at 477.

In *United Steelworkers of America* v. *Marshall*, 647 F.2d 1189 (D.C. Cir. 1980), *cert. denied sub nom. Lead Industries Ass'n* v. *Donovan*, 453 U.S. 913 (1981), the D.C. Circuit limited the *ex parte* contacts doctrine in the context of intra-agency communications. While formulating a final rule regulating workplace exposure to airborne lead, the Assistant Secretary of Labor consulted closely with a staff attorney who argued for the agency staff's proposed standard. The Assistant Secretary also commissioned private consultants to review and analyze the record, and partly relied on these studies in formulating a final rule. The Court, *per* Chief Judge Wright, held that these off-the-record intra-agency communications were permissible, even if slanted towards a particular viewpoint,[2] if they were part of the "deliberative process," a concept closely analogous to the deliberative process exemption under the Freedom of Information Act (FOIA).[3]

The doctrine developed in *Home Box Office* involves three distinct requirements: (1) a flat prohibition on agency receipt of views and information outside the usual channels for public comment; (2) a requirement that such views and information, if received, be memorialized and placed in the administrative file for public comment; and (3) a duty to place such views and information in the record for judicial review. In *Vermont Yankee Nuclear Power Corp.* v. *NRDC*, 435 U.S. 519 (1978), the Supreme Court severely undermined the *Home Box Office* doctrine. It held that, absent exceptional circumstances, a reviewing court may not impose special rulemaking procedures beyond those set forth in the APA.

We believe that *Vermont Yankee* is inconsistent with D.C. Circuit's flat ban on agency receipt of views or information outside the usual channels for public comment. This purely procedural prohibition finds no support whatever in the text or the legislative history of the APA. The APA contains no prohibition on such contacts in informal rulemaking, although it has always prohibited them in adjudication,[4] and a recent amendment provides penalties and remedies when they occur in adjudication or formal rulemaking.[5] Early versions of that amendment prohibited such contacts in informal rulemaking as well,[6] but the provi-

---

[2] *Compare Association of National Advertisers, Inc.* v . *FTC*, 627 F.2d 1151 (D.C. Cir 1979) (disqualification for bias).

[3] 5 U.S.C. § 552(b)(5) (1976).

[4] 5 U.S.C § 554(d) (1976).

[5] Government in the Sunshine Act, 5.U.S C § 557(d) (1976).

[6] *See* S. 260, 93d Cong., 1st Sess 119 Cong. Rec. 647-51 (1973); H.R. 10000, 93d Cong., 1st Sess. 119 Cong. Rec 28,205 (1973); *Hearings on Government in the Sunshine Before the Subcomm on Reorganization, Research, and International Organizations of the Senate Comm. on Government Operations,* 93d Cong , 2d Sess. 189-254 (1974); Senate Comm. on Government Operations, 93d Cong., 2d Sess., *Government in the Sunshine: Response to Subcomm. Questionnaire* (Comm. Print 1974).

sion was deleted with the intention of leaving informal rulemaking unaffected.[7] We believe this history to be strong evidence that there is no basis for imposition by a court of a flat prohibition on agency receipt of views or information outside the ordinary channels. You and your staff may freely contact agencies regarding the substance of proposed regulations, and may do so by way of telephone calls, meetings, or other forms of communication unavailable to members of the public.

It is unclear whether the two other requirements of *Home Box Office*—that the substance of contacts be placed in the administrative file and the record for judicial review—can survive *Vermont Yankee.* These requirements might possibly be supportable, not as part of an *"ex parte* contacts" doctrine, but as implications of the APA's provisions for judicial review and for public participation in informal rulemaking, a question we discuss in the following section. What is clear, however, is that the disclosure obligations, if any, lie with the rulemaking agency and not with your Office. Your Office is therefore under no legal disability with respect to contacts with rulemaking agencies. At most, your Office could adopt procedures as a matter of policy to assist the agencies in complying with our recommendations or with rules fashioned by the agencies themselves to address this issue.[8]

### II. Disclosure Obligations of Rulemaking Agencies

We believe that, at least as a matter of protection against reversal in the D.C. Circuit, rulemaking agencies should disclose in the administrative file and the record for judicial review substantive communications from your Office to the extent that they are (1) purely factual as opposed to deliberative in nature, or (2) received by your Office from a source outside of executive or independent agencies. This conclusion is

[7] S. Rep. No. 354, 94th Cong., 1st Sess. 35 (1975); 121 Cong. Rec. 35,330 (1975) (remarks of Sen. Kennedy).

[8] Specific "hybrid rulemaking" statutes may sometimes impose special rules regarding contacts between your Office and rulemaking agencies. The Clean Air Act Amendments of 1977, for example, require that written documents compiled during your Office's review procedures be placed in the rulemaking docket prior to the promulgation of a final rule. 42 U S.C. § 7607(d)(4)(B)(ii) (Supp. III 1979). These documents are excluded from the record on judicial review. *Id.* § 7607(d)(4)(B)(ii). Two challenges to interagency participation in Clean Air Act rulemaking are now pending in the D.C. Circuit. *Sierra Club* v. *Costle,* Nos. 79–1565 *et al.; American Petroleum Institute* v. *Costle,* Nos. 79–1104 *et al.* In those cases EPA officials met with other Executive Branch officials to discuss a rule after the close of the public comment period; the substance of these meetings was not fully disclosed in the record for judicial review. The government takes the position that EPA fully complied with the Clean Air Act's requirements. The cases have been argued and await decision.*

Internal agency regulations, which have the force of law until repealed, may also limit contacts with your Office during rulemaking. *Cf.* 47 C.F.R. § 1 (1979) (FCC); 16 C.F.R. § 1012 (1979) (CPSC); 14 C.F.R. § 300.2 (CAB).

*Note: In *Sierra Club* v. *Costle,* 657 F.2d 298 (D.C. Cir. 1981), the court of appeals held that "the existence of intra-Executive Branch meetings during the post-comment period . . . violated neither the procedures mandated by the Clean Air Act nor due process." 657 F.2d at 408. In *American Petroleum Institute* v. *Costle,* 665 F.2d 1176 (D.C. Cir. 1981) *cert. denied* 455 U.S. 1034 (1982), the court of appeals refused to consider the plaintiff's objection to EPA's post-comment period contacts with OMB, on grounds that this objection had not first been raised in the administrative proceedings. Ed.

based on a combination of possible disclosure requirements in the APA and a deliberative process exception.

## A. APA Provisions

The APA provides that judicial review of informal rulemaking shall be based on the "whole record." 5 U.S.C. § 706. The Supreme Court has never clearly stated what types of material must be included in the record for judicial review. Traditionally, informal rulemaking procedures were thought to leave the agency almost complete discretion as to what was included in the record; judicial review was correspondingly narrow and deferential. More recently, the Supreme Court has stated that judicial review of informal agency action should be "searching and careful," [9] and that a reviewing court should remand a case to the agency if its determination is not "sustainable on the administrative record made." [10] The relatively intensive judicial scrutiny implied by these statements seems incompatible with the traditional idea that the agency retains complete control over what goes in the record. Lower federal courts have expanded on the Supreme Court's tentative statements by inferring a requirement that the record for judicial review contain all material, whether factual, analytical, or argumentative, which is substantive in the sense that it might have influenced the agency's decision. [11] Finally, the Supreme Court in *Vermont Yankee* gave somewhat conflicting signals on the question. [12] The Court's emphasis on the agency's discretion to structure its own procedures free of judicial interference suggests that this discretion should include the power to determine the content of the record for judicial review. On the other hand, the Court's remand of the case to the D.C. Circuit for a determination of whether the rule was sustainable on the administrative record points to a more stringent record requirement. [13]

The state of the law on this point is, in short, confused. We do not believe it to be particularly useful to attempt to predict whether the Supreme Court would require that substantive oral or written communications received by the agency be included in the record for judicial review. We would, however, recommend that agencies generally adopt

[9] *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U.S. 402, 416 (1971).

[10] *Camp* v. *Pitts*, 411 U.S. 138, 143 (1973) *(per curiam)*.

[11] *See National Courier Ass'n* v. *Board of Governors*, 516 F.2d 1229, 1241 (D.C Cir. 1975). *See generally Portland Cement Ass'n* v. *Ruckelshaus*, 486 F.2d 375 (D.C Cir 1973), *cert. denied*, 417 U.S. 921 (1974); *Kennecott Copper Corp.* v. *EPA*, 462 F.2d 846 (D.C Cir 1972); *International Harvester Co.* v. *Ruckelshaus, 478 F.2d 615 (D.C. Cir. 1973). Cf. Greater Boston Television Corp.* v. *FCC*, 444 F.2d 841 (D.C. Cir 1970), *cert. denied*, 403 U.S. 923 (1971)

[12] *Compare* Stewart, *Vermont Yankee and The Evolution of Administrative Procedure*, 91 Harv. L. Rev. 1805 (1978), *with* Byse, *Vermont Yankee and the Evolution of Administrative Procedure: A Somewhat Different View*, 91 Harv. L. Rev 1823 (1978).

[13] One commenter has argued that in light of the administrative record the Court should simply have affirmed the agency rather than remanding. Breyer, *Vermont Yankee and the Courts' Role in the Nuclear Energy Controversy*, 91 Harv L Rev. 1833 (1978).

111

this course to avoid a substantial danger of reversal in the D.C. Circuit without any assurance of vindication in the Supreme Court.[14]

We would also recommend that agencies generally include substantive oral or written communications in the administrative file for public comment and criticism, at least when these communications occur before the close of public comment.[15] A "public comment" requirement could be inferred from the APA's provision for review on the whole record and its guarantee of an "opportunity to participate in the rule making," 5 U.S.C. § 553(c). On the other hand, such a requirement comes perilously close to the type of extra-statutory procedure *Vermont Yankee* forbids courts to require of agencies. In addition, the opportunity to comment on evidence in the record seems inconsistent with the realities of informal rulemaking, clearly sanctioned by the APA, that interested parties can file comments on the last day of the comment period and thereby deprive others outside the government of a chance to comment unless the agency, in its discretion, chooses to reopen the file. The argument for public comment is considerably weaker than the case for placing substantive material in the judicial record; our judgment is that the Supreme Court would not impose such a requirement. Nevertheless, the D.C. Circuit probably would require public comment,[16] and the prospects of obtaining Supreme Court review of such a determination cannot be predicted.

## B. Deliberative Process Exception

Notwithstanding these general recommendations, we believe that the rulemaking agency need not disclose substantive communications from your Office which form part of the agency's deliberative process. A variety of legal doctrines recognize a privilege against compelled disclosure of the federal government's deliberations. The need for non-disclosure is inherent in the President's constitutional power to "take Care that the Laws be faithfully executed," [17] by "supervis[ing] the guid[ing]" executive agencies in their "construction of the statutes under which they act in order to secure that unitary and uniform execution of the laws which Art. II of the Constitution evidently contemplated in vesting general executive power in the President alone." [18] Similar concerns undergird the constitutionally based privi-

---

[14] The agency need not engage in unnecessary duplication of material already contained in the record, however.

[15] A case-by-case analysis may be required to determine whether the administrative file must be reopened to allow public comment on communications received after the close of the comment period. *See Ethyl Corp.* v. *EPA*, 541 F 2d 1 (D.C. Cir.), *cert. denied*, 426 U.S. 941 (1976).

[16] *See Home Box Office, Inc.* v. *FCC, supra* 567 F.2d 9; *Ethyl Corp.* v. *EPA, supra*, 541 F.2d 1. *Cf. United States Lines, Inc.* v. *FMC*, 584 F.2d 519 (D.C. Cir. 1978) (informal adjudication).

[17] U.S. Const., Art. II, § 3 *See also* U.S. Const., Art. II, § 2 (presidential power to require written opinions from heads of executive departments).

[18] *Myers* v *United States*, 272 U.S. 52, 135 (1926).

lege for certain deliberative communications within the Executive Branch,[19] as well as the rule against probing an administrator's mind in court absent a showing of bad faith or other exceptional circumstances.[20] Congress has safeguarded the deliberative process by exempting deliberative documents from disclosure under the FOIA.[21] Finally, the D.C. Circuit held the *ex parte* contacts doctrine inapplicable to deliberative process communications in *United Steelworkers, supra.* For similar reasons, we believe that oral or written communications which are part of the deliberative process need not be disclosed under any provisions of the APA.

Deliberative process communications are those designed to aid the agency in determining its course based on the facts of record. They include analyses of these facts,[22] legal and policy arguments,[23] and factual data that cannot be reasonably segregated from deliberative material.[24] They do not include oral or written factual data which can be reasonably segregated from deliberative material.[25] Thus the rulemaking agency need not disclose your Office's legal and policy arguments and analyses of the facts, but should generally disclose readily segregable factual material.

Communications from executive or independent agencies are entitled to deliberative process protection. Your Office surely participates in the deliberative process when it exercises the power of the President delegated to you to "supervise and guide" the agency by communicating factual analyses or legal and policy arguments. We believe the deliberative process is also implicated when your Office acts as a "conduit" for views of other executive agencies, since these agencies are part of an integrated Executive Branch headed by the President. We reach the same conclusion with respect to independent agencies.[26] Although largely freed of presidential oversight and supervision, these agencies are part of a unitary government which seeks as far as possible to coordinate its programs and policies.[27]

---

[19] *See United States* v *Nixon,* 418 U.S. 683 (1974).

[20] *See, e.g., United States* v *Morgan,* 313 U S 409, 422 (1941), *National Courier Ass'n v. Board of Governors,* 516 F.2d at 1241–42.

[21] 5 U.S.C. § 552(b)(5); *see generally NLRB* v. *Sears, Roebuck & Co.,* 421 U.S. 132 (1975).

[22] *See United Steelworkers of America* v. *Marshall, supra,* 647 F 2d at 1212 n.20, 1218.

[23] *See, e.g., NLRB* v. *Sears, Roebuck & Co.,* 421 U.S. at 149 (exemption 5 protects attorney-client and attorney work-product privileges); *EPA* v. *Mink,* 410 U.S. 73, 91 (1973) (exemption 5 protects "matters of law, policy or opinion").

[24] *See EPA* v. *Mink,* 410 U.S. 73, 88 (1973); *United Steelworkers of America* v. *Marshall, supra,* 647 F.2d at 1220; *Mead Data Central, Inc.* v. *United States Department of Air Force,* 566 F.2d 242, 260–61 (D C Cir. 1977).

[25] *See* cases cited in note 24, *supra.* Also not within the deliberative process are communications which the agency adopts as the explanation for its action. *See Renegotiation Board* v. *Grumman Aircraft Engineering Corp.,* 421 U.S. 168 (1975); *NLRB* v *Sears, Roebuck & Co., supra,* 421 U.S. 132

[26] Deliberative process documents transmitted from an independent agency to an Executive Branch agency would be exempt from disclosure under FOIA. 5 U.S.C. §§ 552(b)(5), 552(e)

[27] Our conclusions in this regard are consistent with Recommendation 80–6 of the Administrative Conference of the United States Regarding Executive Branch Communications in Informal Rulemaking Proceedings Administrative Conference of the United States: Recommendations and Reports 27 (1980).

113

Our view is that the deliberative process does not extend to the legal or policy views of persons outside of executive or independent agencies. These persons are not within the overall decision process of the rulemaking agency. Their views not being protected by a deliberative process exception, the rulemaking agency would be well advised to place these views in the administrative file and the record for judicial review if the views might affect the agency's decision. Agencies should follow this procedure even if the views are transmitted by an executive or independent agency acting as a "conduit" for the third party.

### III. OMB Procedures

As discussed above, your Office is under no legal obligation to limit its communications with rulemaking agencies. We also conclude that, as a matter of policy, the agencies should include in the administrative file and the record for judicial review substantive oral or written communications from your Office which (1) are purely factual in nature, or (2) are "conduit" transmissions of views or information from persons outside of executive or independent agencies. Your Office could assist the rulemaking agencies in the task of distinguishing what should be disclosed from what may be kept out of the public record, as follows:

(1) Your Office could separate, as far as possible, purely factual material from arguments and analyses in oral or written comments it makes to the rulemaking agency under the Order. A format could be developed for comments which clearly draws this distinction. The agency should generally be entitled to rely on your Office's judgment that the transmitted material is deliberative rather than factual in nature.

(2) With respect to "conduit" communications, the official responsible for commenting to the rulemaking agency could determine whether his views have been influenced by oral or written communications received from someone outside of executive or independent agencies. If so, your Office could require that the third party transmit this material to the rulemaking agency for inclusion in the administrative file and the record for judicial review. The official may transmit to the rulemaking agency a statement of your Office's views, which need not be disclosed except to the extent it includes purely factual material.

Alternatively, or in conjunction with these procedures, your Office could seek to ensure that rulemaking agencies follow the advice contained in this memorandum. Agencies could institute a policy of disclosing in the administrative file and the record for judicial review all material which your Office identifies as purely factual in nature, as well as the identified conduit material transmitted under (2) above. The agencies would have to develop procedures for memorializing the non-

deliberative parts of oral communications from your Office. Your Office could assist the agencies in following these recommendations by rendering informal advice or by more formal instructions.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*