## City of Lexington v. Rankin et al.

April 25, 1939.

WILLIAM A. MINIHAN for appellant.

GEORGE W. VAUGHN and J. J. McBRAYER for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Board of Commissioners of the city of Lexington passed an ordinance in 1936 proposing to annex certain territory to the city. Lexington is a city of the second class, and the ordinance and the proceedings thereunder were in conformity with the pertinent statutory provisions on the subject.

The territory proposed to be annexed adjoins the corporate limits of Lexington on the east, and is a well-developed and desirable residential section. It includes all, or a part, of certain subdivisions referred to in the record, as Kenwick, Fairway and Ashland. The

population of the territory sought to be annexed is approximately 2,700, and the number of resident freeholders of the territory is 635, of whom 554, or more than 87 per cent., filed a petition in the Fayette circuit court within thirty days after the enactment of the ordinance protesting against the annexation, and setting forth reasons why the territory should not be annexed. It was alleged in the petition and shown in the proof that far more than 90 per cent. of the resident freeholders had remonstrated. A large amount of proof was heard, and, upon submission of the case, the chancellor found that failure to annex the territory would not materially retard the prosperity of the city or of the owners and inhabitants of the territory sought to be annexed, and adjudged that the annexation should not take place. The city has appealed.

Section 3051 of the Kentucky Statutes, which is a part of the charter of cities of the second class, after providing that within thirty days after the enactment of an ordinance proposing to annex territory to the city one or more residents or freeholders of the territory proposed to be annexed may file a petition in the circuit court of the county setting forth the reasons why the territory should not be annexed, reads as follows:

"The case shall be tried according to the rules and practice prescribed for the trial of equity cases, but without the intervention of a jury. If the Court be satisfied, upon the hearing, that less than fifty per cent. (50%) of the freeholders of the territory to be annexed or stricken off have remonstrated, and that the adding or striking off of such territory to the City will be for its interest, and will cause no manifest injury to the persons owning real estate in the territory sought to be annexed or stricken off, it shall so find and said annexation or reduction shall be approved. If the Court shall be satisfied that fifty per cent. (50%) or more, of the resident freeholders of the territory sought to be annexed or stricken off have remonstrated, then such annexation or reduction shall not take place, unless the Court shall find, from the evidence, that a failure to annex or strike off will materially retard the prosperity of such City, and of the owners and inhabitants of the territory sought to be annexed or stricken off. In case the Court shall so

find, the annexation or reduction shall take place, notwithstanding the remonstrance.''

The proof shows that storm sewers and sanitary sewers have been constructed in the territory sought to be annexed. The western part of the territory lies in the same watershed as the city of Lexington, and surface water drains toward the city. The surface water is collected into storm sewers which connect with the storm sewers of the city at the corporate limits. The surface water from the eastern part of the territory is collected into storm sewers which empty into a small stream which flows in an easterly direction away from the city. The sanitary sewerage system is connected with the sanitary sewerage system of the city, and the sewage is carried through the city sewers to its disposal plant. A portion of the territory sought to be annexed is not supplied with sanitary sewers, and this is advanced by the city as a reason for the annexation of the territory. The sewage in this territory is disposed of in cesspools and septic tanks, and it is argued that this creates a health hazard both to the inhabitants of the city and the inhabitants of that particular territory. The proof on this point shows, however, that the residents of the territory not supplied with sanitary sewers maintain sanitary septic tanks which are inspected at regular intervals by the county health officer, and that no complaint has ever been made concerning the manner of disposing of sewage in that territory. It is also argued by the city that the territory sought to be annexed has no municipal garbage collection, and that the accumulation of garbage may be a menace to the health, not only of the inhabitants of the particular territory, but of the inhabitants of the city. Many residents of the territory, some of whom had formerly resided in the city, testified that all garbage and trash in the territory was collected and removed promptly, and, though done under private contract, was collected as promptly and efficiently as in the city. The chief of police and other officers of the city testified that the inhabitants of the territory in question had frequently sought the aid of the police department of the city and members of the fire department testified that they were frequently called to fight fires in the territory, and it is argued that the inhabitants' of the territory sought to be annexed are in need of more adequate police and fire protection. The proof shows,

however, that the territory is inhabited by peaceful, law-abiding citizens, and that its needs for police protection are adequately cared for by the county police patrol force and the sheriff and his deputies. The proof for the plaintiffs also showed that there are no particular fire hazards in the territory, and that a fire department maintained by the county affords adequate protection. There was also proof as to the effect of the annexation on the school systems of the city and county, and the advantages and disadvantages in this respect to the inhabitants of the respective territories. It is conceded that the Board of Education of Fayette County maintains a splendid system of schools, and has recently erected a large modern building for the elementary grades accessible to the children of school age in the territory sought to be annexed, and that high schools are maintained by the county board which are also accessible. The city has a number of new, well-equipped school buildings, but it is admitted that certain additions must be made if new territory is to be annexed.

A careful reading of the evidence fails to show that the prosperity of the city and the inhabitants of the territory sought to be annexed will be retarded by failure to annex the territory. It will be noted that the statute places the burden upon the city where more than 50 per cent. of the freeholders remonstrate. The statute provides that if less than 50 per cent. of the freeholders of the territory to be annexed have remonstrated, the court shall approve the annexation if it is satisfied that the adding of such territory to the city will be for its interest and will cause no manifest injury to the persons owning real estate in the territory. On the other hand, if more than 50 per cent. of the freeholders have remonstrated, the annexation shall not take place unless the court shall find from the evidence that a failure to annex will materially retard the prosperity of both the city and the inhabitants of the territory sought to be annexed. The Legislature, for some reason, has seen fit to make it extremely difficult for cities, and especially cities of the second class, to annex adjacent territory where a majority of the inhabitants of such territory are opposed to annexation. Appellant cites and relies upon City of Georgetown v. Pullen, 187 Ky. 697, 220 S. W. 733, in which this court held that it appeared from the evidence that the annexation would be for the

interest of the city, and that no material injury would result to owners of real estate by the proposed extension. The only reasons advanced in that case as to why the territory should not be annexed related to municipal taxation, and were based upon the theory that the owners of real estate in the territory would be required to pay a higher rate of taxation without receiving corresponding benefits. It was held that taxation for governmental purposes was not such an injury as was contemplated by the statute governing the annexation of territory by a city. Georgetown was a city of the fourth class, and the charter of cities of that class prescribing the procedure for annexing territory differs materially from the charter of cities of the second class. Section 3483, which prescribes how territory may be annexed by cities of the fourth class, provides that if a majority of the resident voters in the territory to be affected have remonstrated against the annexation and such annexation will cause material injury to the owners of real estate in the limits of the proposed extension said annexation shall not take place. In the case of a city of the second class, it is not necessary, in order to prevent annexation, to show that material injury to the owners of real estate in the territory sought to be annexed will result, but the burden is on the city to show that a failure to annex will materially retard the prosperity both of the city and of the owners and inhabitants of the adjacent territory.

In Gilley v. City of Russell, 212 Ky. 798, 280 S. W. 101, 102, this court, in construing section 3483 of the Kentucky Statutes, which prescribes the procedure for the annexation of territory by a city of the fourth class, said:

"Obviously, the language of the statute grants a broad discretion to the courts in determining whether under all the facts a proposed annexation should be made. It is in evidence that at least 90 per cent. of the resident voters of the territory proposed to be annexed are opposed to it, and have in one way or another entered their protest against it. Under these conditions, in the absence of some controlling reason why the annexation as proposed is vitally essential to the welfare of the city, it would be an abuse of discretion to adjudge it."

The foregoing quotation is particularly pertinent in the construction of section 3051 of the Kentucky

Statutes, which prescribes the procedure for the annexation of territory by a city of the second class, and we are not prepared to say the circuit judge abused the discretion vested in him when he adjudged that the annexation should not take place. It may be, as argued by counsel for appellant, that the residents of the territory sought to be annexed enjoy many of the benefits of the city without contributing to its support, and that it is ungracious on their part, under the circumstances, to protest against annexation. But the Legislature has seen fit to fix the conditions upon which annexation shall take place, and, in doing so, to put a difficult burden on the city in the matter of proof if 50 per cent. or more of the resident freeholders remonstrate. The proof for the city in the present case failed to measure up to this requirement. Furthermore, the appellees introduced a large amount of proof, which is not controverted, to the effect that annexation would materially decrease the value of property in the annexed area, and make it impossible for many freeholders to continue to hold their homes. We think the evidence fails to show that failure to annex will materially retard the prosperity of the city or of the inhabitants of the territory sought to be annexed.

The judgment is affirmed.