No. 54,422

*In re:* THE APPEAL OF THE CITY OF LENEXA TO THE DECISION OF THE BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, DENYING A PETITION TO ANNEX CERTAIN LANDS, PURSUANT TO K.S.A. 12-521.

(657 P.2d 47)

Opinion filed January 14, 1983.

*Richard W. Byrum,* of Schnider, Shamberg & May, Chartered; of Shawnee Mission, and *Robert H. Freilich,* of University of Missouri-Kansas City, argued the cause and were on the brief for appellant City of Lenexa.

*Bruce F. Landeck,* assistant county counselor, argued the cause and *Lyndus A. Henry,* county counselor, and *Philip S. Harness,* assistant county counselor, were with him on the brief for appellee Board of County Commissioners of Johnson County, Kansas.

*John Anderson, Jr.,* of Overland Park, argued the cause and was on the brief for appellee John Anderson, Jr.

*Byron J. Beck,* of Morrison, Hecker, Curtis, Kuder & Parrish, of Overland Park, argued the cause and was on the brief for appellee Byron J. Beck.

*Leonard A. Hall,* assistant municipal counsel, and *Thomas A. Glinstra,* municipal counsel, of Olathe, were on the brief for intervenor City of Olathe, Kansas.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the City of Lenexa from the denial of its petition to annex an area of approximately twenty square miles lying to the west of its present city limits. Lenexa's petition for permission to annex the territory was filed with the Board of County Commissioners of Johnson County pursuant to K.S.A. 12-521. After a hearing, the Board denied the petition. Lenexa appealed to the District Court of Johnson County. The court approved the Board's denial of the proposed annexation. Lenexa then appealed the matter to the Court of Appeals, and we transferred the case to this court. Many issues are raised. We will separately state and discuss them later in this opinion.

The parties appearing in this court are the City of Lenexa, appellant, the Board of County Commissioners and landowners John Anderson, Jr., and Byron J. Beck, appellees, and the intervenor, City of Olathe, appellee.

The facts giving rise to this appeal were before us in an interlocutory appeal, *Board of Johnson County Comm'rs v. City of Lenexa,* 230 Kan. 632, 640 P.2d 1212 (1982), where we held that the Board was a proper party to the pending appeal before the district court. We remanded, with directions to permit the Board to participate in further proceedings in the district court. The case has now been heard and fully decided below. Rather than restate the background facts, we repeat Justice Prager's succinct summary of the facts from our earlier opinion:

"On July 2, 1979, the city of Lenexa filed with the Board of County Commissioners of Johnson County a petition for authority to annex to the western limits of the city 12,800 acres of unincorporated territory covering an area of approximately 20 square miles. The petition was filed pursuant to K.S.A. 12-521. A notice of the time and place of the public hearing was published pursuant to the statute. There is no dispute that the city of Lenexa substantially complied with the requirements of K.S.A. 12-521 in all matters of procedure. The board held a public hearing on the petition on September 4, 1979.

"On September 19, 1979, the board denied Lenexa's petition for annexation. In its order, the board commented on its review of certain standards and factors, including but not limited to:

"(1) Population density per square mile of the territory proposed to be annexed;

"(2) future growth patterns of the area and the capability of planning thereof;

"(3) drainage basins and concern for storm and sanitary sewers;

"(4) conditions of roads;

"(5) degree of platted and unplatted lands;

"(6) extent of residential, business, commercial, and industrial development and other aspects of economic interaction;

"(7) the urban or rural nature of the area;

"(8) the effect of city expenses upon the area;

"(9) the ability or inability to supply within a reasonable time for the extension of city service;

"(10) the probability of consent annexations and other statutory annexations in the future; and

"(11) the exhibits, maps, briefs, and documentation presented. The board in its order further found that the proposed territory sought to be annexed by Lenexa was under the planning jurisdictions of certain township zoning boards and Johnson County through the Johnson County Planning Commission; further that the proposed territory was within the corporate shadow of the cities of Lenexa and Olathe; further, that other annexation statutes (K.S.A. 12-520, 12-520a, 12-520b and 12-520c) provided the city of Lenexa adequate opportunity to proceed with orderly municipal growth as future residential, commercial, and industrial demands unfold and, further, that present zoning safeguards will be maintained so that the future of the municipalities and the county interests will not be jeopardized.

"The board specifically found and concluded that the granting of Lenexa's petition would result in obvious impairment to the real estate involved in that the landowners would not share within a reasonable time the municipal services and benefits now afforded to the landowners in other portions of the municipality upon a footing of substantial equality, and that the granting of Lenexa's petition would cause and result in manifest injury to the landowners of the proposed area sought to be annexed." 230 Kan. at 632-34.

The district judge filed a memorandum decision in which he made extensive findings of fact and conclusions of law. His factual findings parallel the facts stated above, but also include the following:

"Apart from three small areas of residential development . . . substantially all of the 20 square miles is agricultural in use and is so zoned.

"At the public hearing [before the Board] on September 4, 1979 a great crowd of landowners in the area attended and protested the annexation. Representatives of the City of Olathe attended and protested the annexation for the reason the proposed area included land already annexed by the City of Olathe, and for the further reason the annexation would annex all the unincorporated land lying North of Olathe and adjoining the City of Olathe. . . .

"The Mayor of Olathe denominated the proceedings an annexation war between the cities.

"In the presentation made by the officials of the City of Lenexa, it was stated that the 20 square mile area was divided by Mill Creek and the Santa Fe Railroad running North and South through the tract and that only as to the easterly half of the tract was Lenexa realistically capable of providing adequate municipal services within the next five to ten years.

"[An attorney] for Lenexa . . . stated at the hearing:

" 'The City of Lenexa did not intend to make full annexation immediately of this area. One portion it will, but as to the second portion it is the full function and purpose of Lenexa to continue to exercise extra territorial control over that

outlying area and to utilize those powers and to provide for those services through that means until a method of annexation does indicate that full services will be provided. In other words a time and sequence approach . . . will be adopted by the City in this particular area.'

The Mayor of Lenexa said that because of Olathe's annexation of lands on Lenexa's Western border, the City felt it should ask for unchallenged authority to annex the entire area. He said: 'This would not necessarily mean that Lenexa would annex the entire area at once.' The City Planner said it was the plan that Lenexa annex West to Mill Creek and not annex beyond Mill Creek for at least five years. . . .

"The Board of County Commissioners . . . by unanimous vote, made the following resolution:

" 'The granting of Lenexa's petition would result in obvious impairment to the real estate involved in that the landowners would not share within a reasonable time the municipal services and benefits now afforded to the landowners in other portions of the municipality upon a footing of substantial equality; further, that the granting of Lenexa's petition would cause and result in manifest injury to the landowners of the proposed area sought to be annexed.'

"The Court has found and ordered that it may and will take judicial notice of certain matters of common knowledge and public records. These relate to (i) the existing county road and bridge unit system whereby Johnson County maintains roads, keeps in repair the roads and bridges throughout the twenty (20) square mile area; (ii) the City of Lenexa does not provide water service for the City and would not provide such service within the area; (iii) Johnson County provides sewer service in the area within the entire tract; (iv) Monticello Township provides fire district protection for the western half or more of the entire area and provides ambulance service for most of the area; and (v) the Court notes that the tax levies for the City of Lenexa are substantially greater than for any of the proposed annexation area."

## The trial judge then announced his conclusions of law, which are as follows:

"1. The Court's appellate review is limited to a review of the record on appeal and consideration of those matters of which the Court may exercise judicial notice under K.S.A. 60-409.

"2. The Court may not substitute its judgment for that of the Board of County Commissioners but may determine only (1) whether the Board's decision was arbitrary, capricious or unreasonable, (2) whether the Board's decision was substantially supported by the evidence, and (3) whether the Board was acting within the scope of its authority. *Kansas Board of Healing Arts v. Foote,* 200 Kan. 447.

"3. The City of Lenexa is here on appeal from an adverse ruling by the Board of County Commissioners and the appellant has the burden of proof on the issues on appeal. *Gorham v. City of Kansas City,* 225 Kan. 369, 379.

"4. The plan of the City of Lenexa for extension of services which are furnished in the city into the proposed annexation area does not meet such requirements as would prevent manifest injury to the landowners within the area. The City would not furnish the traditional services known as sewers, lights, water and gas. All

these already exist in the area to be annexed or would be furnished by other governmental agencies or public utilities. The City made no showing that it would maintain streets and roads of equal or better service than the County road unit system. There was evidence the City service would be of lesser quality. And annexation would interfere with fire protection and ambulance service in the area.

"5. The finding by the Board of County Commissioners that annexation would result in manifest injury to the landowners is supported by the facts that any benefits to inure to the landowners would be disproportionately low when compared to the added tax burden which would result from annexation. See *City of Louisville v. Kraft,* 297 S.W.2d 39.

"6. It is clear, from the evidence, that the 'general land use pattern in the area' is agricultural.

"7. It is difficult to see how the City could properly maintain the County roads and equal the County road unit [maintenance] level.

"8. From the tax records it appears that the ad valorem tax for rural Monticello Township in District 311 was 85.68 dollars per thousand assessed valuation in 1980. In the City of Lenexa it was 116 dollars per thousand.

"9. Adding to the tax burden, taking away county road maintenance, ambulance service, fire protection and giving no benefit in utility or sewer services would be a manifest injury to the landowners.

"10. The administrative services of the City in zoning, dog leash law and municipal city functions have not been shown to be a benefit to this rural area.

"11. The statute under which this proceeding lies places upon the Administrative Board the responsibility of hearing testimony as to the advisability of such annexation, including the plan for services into the area. Inherent in the approval of the ultimate finding by the Board as being reasonable and not arbitrary or capricious is the reasonableness or unreasonableness of the proposed annexation. The action to be reviewed under K.S.A. 12-521 is distinguished from an ex parte annexation taken by a city under K.S.A. 12-520 as reviewed in *Clarke v. City of Wichita,* 218 Kan. 334, and the wisdom and advisability of the annexation is an issue within the review of the Court. This is not to say the Court may substitute its judgment for that of the Board, but that the Court may, upon total review of the record and facts, determine the ultimate reasonableness of the Board's order and the reasonableness of the annexation proposed. When this is done, much as was done by the Court in *City of Sugar Creek v. Standard Oil Co.,* 163 F.2d 310, it is clear that the findings of the Board that such annexation would work manifest injury are reasonable; that the Board's order denying the annexation is reasonable and that such proposed annexation was 'clearly unreasonable'.

"12. The Order of the Board of County Commissioners in denying the annexation petition of the City of Lenexa, Kansas was within the statutory authority of the Board, was supported by evidence and was not unreasonable, arbitrary or capricious and should be affirmed.

"13. The finding by the Board that such proposed annexation would create manifest injury to the landowners was supported by the evidence and was reasonable.

"14. The City of Lenexa sought by its petition to annex a part of the City of Olathe contrary to K.S.A. 12-524 and notwithstanding the separate appeals this

Court cannot find the Board's Order to be in error when it disapproves such an attempt by Lenexa.

"15. The City of Lenexa admitted publicly and in the record that it did not intend to annex the westerly half of the 20 square mile tract even if approved by the Board until approximately five to ten years hence. What Lenexa really was seeking was a procedure whereby it could place the area in limbo so Olathe or another city could not annex it or another city could not be incorporated and keep it available for future action by the City of Lenexa. The annexation laws do not provide for such a procedure even though Lenexa city planners may think it advisable.

"16. Since the City of Lenexa does not seek prompt annexation and does not propose prompt extension of services, the Board's Order disapproving the annexation is reasonable and is approved."

Judgment was entered in conformity with the memorandum decision. The City of Lenexa appeals.

K.S.A. 1981 Supp. 12-520 is the familiar statute under which most annexation proceedings are conducted. In general, it may be said to provide for direct annexation by cities of relatively small tracts, usually platted land adjoining or within a city, or unplatted land owned by the city or owned by someone who petitions for or consents to the annexation.

Resort must be had to K.S.A. 12-521 when annexation is not authorized by 12-520. That is the situation here. K.S.A. 12-521 provides in pertinent part:

"Whenever the governing body of any city deems it advisable to annex land which such city is not permitted to annex under the authority of K.S.A. 12-520 and amendments thereto, the governing body in the name of the city may present a petition to the board of county commissioners of the county in which the land sought to be annexed is located. The petition shall set forth a legal description of the land sought to be annexed and request a public hearing on the advisability of such annexation. The governing body of such city shall make plans for the extension of services to land proposed to be annexed and shall file a copy thereof with the board of county commissioners at a time of presentation of the petition."

The statute then lists specific items which the city must include with its petition, provides for the giving of public notice of hearing both by publication and by mailing notices to each landowner, and for the holding of a public hearing by the board. The statute concludes:

"If said board shall be satisfied that such annexation or the annexation of a lesser amount of such land will cause no manifest injury to such owners, they shall so find and grant the annexation by order; and thereupon the city may annex the land by ordinance. . . .

"Any owner or the city aggrieved by the decision of the board of county

commissioners may appeal from the decision of such board to the district court of the same county in the manner and method set forth in K.S.A. 19-223. Any city so appealing shall not be required to execute the bond prescribed therein."

There is no claim of noncompliance with the procedural provisions of K.S.A. 12-521.

I. The Scope of Review

The first of many disputed points is what scope of review this court should exercise. We start with a review of the function of a board of county commissioners under K.S.A. 12-521. Discussing this statute when this case was before us on the interlocutory appeal in *Board of Johnson County Comm'rs,* we said:

"It is inconceivable that the legislature would require a city to petition a county board of commissioners and request a hearing on the advisability of an annexation and require the county board to *hear testimony on the advisability* without the intention that the county board *determine* the advisability of the annexation. Under K.S.A. 12-521, the city proposes the annexation; it is up to the board to grant or deny the annexation. In carrying out its function of determining the advisability of the annexation the board is, at least in part, carrying out legislative functions as well as quasi-judicial functions and in so doing has an obligation to see that the rights of the public are protected." 230 Kan. at 640. (Emphasis in original.)

The Board thus wears two hats: When it determines *advisability,* it acts in a legislative capacity, but when it determines *manifest injury,* it acts in a quasi-judicial capacity. A predecessor of our present annexation statute, G.S. 1901, § 1172, required a city seeking to annex adjacent territory to petition the board of county commissioners, which then held a hearing "as to the advisability of making such addition." If the board concluded that the annexation would "cause no manifest injury to the persons owning real estate in the territory sought to be added," the board was authorized by the statute to enter an order effecting the annexation. That statute was before us in the case of *Nash v. Glen Elder,* 74 Kan. 756, 88 Pac. 62 (1906). Justice Mason, speaking for the court, said:

"The county board in the exercise of its original jurisdiction has at least two questions to determine when a proper petition is presented: (1) Whether the proposed change can be made without manifest injury to the persons owning real estate in the territory sought to be added; (2) if so, whether the annexation shall be ordered. The first determination is judicial; the second legislative." 74 Kan. at 761.

Returning to the case at hand, when a district court is called

upon to review the action of the board in determining the judicial issue of manifest injury, the reviewing court is limited to considering whether, as a matter of law, (1) the board acted fraudulently, arbitrarily, or capriciously, (2) the board's order is supported by substantial evidence, and (3) the board's action was within the scope of its authority. See *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828 (1968); *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.,* 217 Kan. 546, 539 P.2d 1 (1975). In reviewing the district court's judgment, this court must first· determine whether the district court observed the requirements and restrictions placed upon it, and then make the same review of the Board's action as does the district court. *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. 169, 172, 630 P.2d 1131 (1981).

The judicial review of the Board's determination of the *advisability* of the annexation, however, is the review of the legislative function. The duty of the district court, and of this court on appeal, is limited to a determination of whether the Board has the statutory authority to enter the order which it made. *State, ex rel., v. City of Overland Park,* 192 Kan. 654, 656, 391 P.2d 128 (1964); *State ex rel., v. City of Kansas City,* 181 Kan. 870, 317 P.2d 806 (1957). In the former case we said:

"The wisdom, propriety, necessity or advisability of annexing territory to cities is not a matter for consideration by the courts. [Citations omitted.] The basic function and duty of the courts is to determine whether a city has statutory authority and has acted thereunder in passing an annexation ordinance." 192 Kan. at 656.

The only function of the courts, then, with reference to the review of the Board's finding that the annexation was not advisable, is to determine whether the Board had statutory authority to make the order which it made. None of the parties challenge the Board's *statutory* authority to allow or deny the annexation.

II. Was the Board's action arbitrary and capricious?

Lenexa argues that the Board's action was arbitrary and capricious because the Board—and the district court—grievously misunderstood the two-part relief Lenexa was seeking from its petition. In short, the City argues that it was seeking immediate authority to annex "Area I"—that portion of the territory which lies east of Mill Creek—and that it merely wanted "Area II"—that portion west of Mill Creek—placed in a "holding zone" for

Lenexa's future annexation. On this basis it contends that the Board and the trial court erred in not granting Lenexa authority to annex "Area I" immediately.

There are many difficulties with this argument. Lenexa's petition, never amended, asked for authority to annex the entire twenty square mile area. It never changed its request, and sought authority to annex the entire area throughout the entire proceedings before the Board. There was no mention of "Area I" and "Area II," although Lenexa did advise the Board that it intended to annex that part of the territory east of Mill Creek promptly, and to supply services to the residents of that area after authority to annex was granted. The City also indicated that it did not desire to annex that part of the territory lying west of the railroad or Mill Creek for some years, perhaps ten or more. Lenexa's goal, however, was inflexible: It sought immediate authority to annex the entire area. Never did it suggest to the Board that the City be granted leave to annex less than the entire twenty square mile tract. Once the authority was granted, the City intended to exercise that authority in two or more parts. But the action it sought from the Board was not two-part; it was one-part: authority to annex the entire tract.

The record indicates that the Board fully understood the statute, and understood that it could authorize less than the entire tract included within the petition. Lenexa argues that the Board's determination that the granting of the City's request would impair the landowners, since they would not share in municipal services within a reasonable time, is "implicit" evidence that the Board considered only Area II in denying the whole annexation. The Board's decision does not reflect such a distinction. There was evidence that the City would not supply all of the usual municipal services, but that some of them would continue to be supplied by the same entities which supplied them at the time the petition was filed. There was further evidence that annexation of a part of the territory would leave some of these entities with an insufficient tax base to continue to function properly. Further, there was evidence that the City was not prepared to maintain the roads within the territory, or even a part of it, as well as those roads were presently being maintained. Further, the vast bulk of the area lying east of Mill Creek and the railroad is undeveloped agricultural land, similar to that lying west of either dividing line.

The Board certainly had the right to take the entire territory into consideration in making its determination of manifest injury. We find nothing in the record to indicate that the Board misunderstood the relief sought by Lenexa in its petition.

Lenexa argues that under the statute, it is the annexing city which decides in the first instance and in the last instance what territory to annex. None of the parties quarrel with this assertion. Lenexa, however, argues that since the Board disagreed with the City, the Board is somehow attempting to usurp the City's power and authority under K.S.A. 12-521. Nothing in the record or in the Board's written order supports this argument. In the earlier appeal in this case, *Board of Johnson County Comm'rs v. City of Lenexa,* we observed that under K.S.A. 12-521, the board of county commissioners participates *to a significant extent* in the annexation proceedings. We enumerated six steps in the proceedings and noted the Board's responsibility therein. And we said: "The city *proposes* the annexation and the board of county commissioners has the administrative obligation to *grant or deny* the petition for annexation." (Emphasis in original.) 230 Kan. at 640. The Board here merely discharged that administrative obligation.

Next, under its claim of arbitrary and capricious action on the part of the Board, Lenexa argues that under the common law doctrine of prior jurisdiction, it was entitled to have the western portion of the territory placed in a holding zone, to allow the City to plan for the future annexation of that area. The doctrine of prior jurisdiction is essentially a rule of priority, to be applied in cases where two municipal corporations seek to annex the same territory. See 2 McQuillin, Municipal Corporations § 7.22a (3d ed. 1979). Thus, the city which takes the first valid step toward annexation of territory has priority over any other city which later seeks to annex, so long as the original proceeding is pending. Once the proceeding is terminated adversely to the first city, however, the priority which accompanied the original valid proceeding vanishes.

In the case now before us, Lenexa's first valid step was to file a petition for annexation with the Board. During the pendency of that proceeding, Lenexa undoubtedly had priority to the area sought to be annexed, and would have a prior right to annex that territory as against any other city. When the Board denied Len-

exa's petition (and the trial court and this court affirmed), both the City and the territory returned to their former positions and the doctrine of prior jurisdiction had no further relevance. The doctrine does not create affirmative rights independent of a valid pending proceeding.

There is some similarity in the case of *Town of Clive v. Colby,* 255 Iowa 483, 123 N.W.2d 331 (1963). There, the Town of Clive sought to annex an area also sought by the City of Windsor Heights. Clive instituted annexation proceedings first, but failed to make an affirmative showing, as required by statute, that it was capable of furnishing substantial services, and thus annexation was denied. The Iowa court concluded that failure of the town to meet the statutory requirements resulted in a failure to acquire exclusive jurisdiction. Thus, the later voluntary annexation of the territory by the City of Windsor Heights was upheld. The court said:

"We said in State ex rel. Mercer v. Incorporated Town of Crestwood (1957), 248 Iowa 627, 632, 633, 80 N.W.2d 489, 492: 'All parties agree as to the legal principle that in a conflict between annexation and incorporation, the proceeding first instituted has precedence. [Citations] ° ° ° The great weight of authority in other states is that annexation proceedings and incorporation proceedings are legislative in character and the entity taking the first legislative step has exclusive jurisdiction to complete its procedure.' [Citations] We reaffirm these statements. However, the instant case demands consideration of an additional factor not previously considered by this court.

"In all prior Iowa cases the party who took first action apparently pursued its course to a successful conclusion. In the instant case we have held that Clive failed to make an affirmative showing of any capability to furnish substantial services or benefits. It therefore failed to meet the statutory requirements. It was permitted to pursue the regular procedure to conclusion without interference. The conclusion was adverse. This is the first case in which we have been called upon to decide whether compliance with the statute is essential to the exclusive jurisdiction referred to in the foregoing authorities.

. . . .

"The majority rule is set forth in 2 McQuillin, Municipal Corporations (Third Ed.), section 7.22, as follows:

" 'A proceeding for the annexation of territory to a contiguous municipal corporation is ineffectual when instituted after the institution of a proceeding for the organization of the territory into a village or city, and while such proceeding is pending and undetermined. *However, annexation proceedings are not precluded where the pending incorporation proceedings do not comply with the statute, or are otherwise insufficient to deprive the annexing city of jurisdiction or authority to acquire the territory involved.'* (Emphasis added.)

"This principle is in accord with the public interest. We have stated herein that a city should not be permitted to tie up contiguous property by initiating

annexation proceedings at a time when it cannot meet the statutory requirements in order to gain time to build up its capabilities. The capabilities are to be determined on the conditions that exist when annexation proceedings are initiated and they are to be conducted with reasonable dispatch. These principles would be circumvented if we were to hold the initiating party had exclusive jurisdiction until a decree finding the statutory requirements were not met.

"Five years have passed since Clive first instituted proceedings in this case. Although we found it unnecessary to decide whether it lost exclusive jurisdiction by reason of the delay, it offers a graphic example of the problem created if exclusive jurisdiction were conferred upon the first party to act until a final decision was reached. It would still be an unincorporated area, offered as a prize to the winner of another 'race to the courthouse.' One such race is enough. A winner who has been disqualified by a decision of this court is not entitled to a fresh start. The race goes to the party which instituted the first valid proceeding and complied with the statute.

"As Clive failed to meet the requirements of section 362.26, Code of Iowa, the proceedings were not valid or effective. It failed to acquire exclusive jurisdiction over the disputed territory. The application for voluntary annexation and its subsequent approval by the Town Council of Windsor Heights had priority and jurisdiction over the disputed territory and we decree that said territory [is] a part of the municipal corporation of Windsor Heights  .  .  .  ." 255 Iowa at 493-494, 496-497.

As long as Lenexa's petition was pending, and for a reasonable time thereafter if the petition were granted in whole or in part, Lenexa would have a prior right to annex, as against other cities attempting to annex the same territory. That, however, is not the case; the relief sought has been denied; the doctrine is inapplicable here. The doctrine applies as between competing municipalities; it does not, in and of itself, create a right where only one municipality is involved. The situation here is analogous and the same reasoning should apply as in *Town of Clive*, cited above. Lenexa was permitted to pursue its annexation proceeding under K.S.A. 12-521 to its conclusion; that conclusion was adverse. Lenexa is no longer in a position to assert the doctrine of prior jurisdiction. In another portion of its brief, the City of Lenexa quite candidly states: "The priority issue will ripen only if Lenexa's annexation is in whole or in pertinent part approved either by this Court or upon remand." We agree.

Lenexa next argues that the Board and the trial court should have considered the east half of the twenty square mile area as a separate matter, and should have granted the city authority to annex that portion of the territory. Briefly, the City contends that because the statute grants authority to the Board to approve the annexation of a lesser amount of land if the Board finds that

annexation will cause no manifest injury to the landowners, then the Board *must* allow annexation of the smaller area. This argument assumes (1) that the Board misunderstood the statute and did not know that it could grant authority as to less than the whole of the territory sought to be annexed, and (2) that the Board found no manifest injury, and that in fact there is no manifest injury to the landowners of the east half of the territory. What we have already said in this opinion disposes of both arguments; the Board was fully cognizant of its authority and of the provisions of the statute; and the Board did not find that manifest injury would occur only to the landowners in the western portion of the proposed tract. The Board found that manifest injury would occur to landowners in the entire twenty square mile territory.

III. Did the trial court misapply the "fairly debatable" rule relied upon and applied in *City of Sugar Creek v. Standard Oil Co.,* 163 F.2d 320 (8th Cir. 1947)?

The *Sugar Creek* case discusses and applies the "fairly debatable" rule, a standard of review applicable in the courts of Missouri when called upon to determine the reasonableness of municipal annexation. The rule is discussed in *Sugar Creek* as follows:

"Under Missouri law, in any annexation where the prescriptions of the statute have been followed, the action of the city will be presumed to have had a reasonable basis. [Citations omitted.] But a right to test legally whether the city's action has in fact had a reasonable basis is recognized, since the statute does not give to those whose property is being annexed any voice or vote on the annexation. [Citations omitted.] The courts, however, will not undertake to substitute their judgment for that of the city council and the electorate, and they will therefore not declare an annexation invalid unless the evidence is convincing that reasonable men would have to agree, from the nature, scope, object, need and results of the annexation, that the action was unreasonable and ought not to have been taken. Municipal need must be liberally viewed and is, of course, entitled to dominance over all other considerations.

"The Missouri Supreme Court stated the controlling principle thus, in State ex inf. Mallett ex rel. Womack v. City of Joplin, 332 Mo. 1193, 62 S.W.2d 393, 398: 'It was not for the trial court to decide whether, upon the facts shown to exist, the extension of the boundaries was necessary, but to determine whether or not, upon the facts shown to exist, reasonable men would differ as to the necessity of the extension. If the question of whether or not the territory involved should be included within the city limits was fairly debatable, that is, if there was substantial evidence each way so that reasonable men would differ about its necessity, then the decision of that question was for the city council and the city electorate and not for the court. When the evidence shows a fairly debatable question about the matter, then neither way the question might be decided would be unreason-

able. On the other hand, if there was substantial evidence tending to show that there was no fairly debatable question about it, and that reasonable men could not differ about it, but would have to agree that it was not necessary to annex the territory, then a trial court's finding that it was unreasonable would be binding (in spite of testimony to the contrary), and would have to be sustained.'" 163 F.2d at 322-323.

The trial court cited *Sugar Creek* in paragraph No. 11 of its order, quoted above, in the context of determining the ultimate reasonableness of the Board's order and the proposed annexation. The City contends the "fairly debatable" rule, stated in *Sugar Creek,* should have been applied by the trial court to the legislative determination of the City to annex, not to the action by the board of county commissioners; further, the City argues that the Board in its determination of manifest injury, is bound by the "fairly debatable" rule, and should not find manifest injury if there is a fairly debatable question about it.

The rule, as we have noted, is applicable in Missouri in cases challenging annexation. The Eighth Circuit Court of Appeals noted in its opinion that Missouri statutes do not give the person whose property is being annexed any voice or vote on the annexation. K.S.A. 12-521, here involved, provides for notification of the landowners both by publication and by mailing. K.S.A. 1981 Supp. 12-520 provides for notice by publication. In either event, public hearings are held before the proposed annexation may be effected. The scope of appellate review of the advisability of annexation proceedings under section 520 is stated in *Clarke v. City of Wichita,* 218 Kan. 334, 543 P.2d 973 (1975), by Justice (now Chief Justice) Schroeder in Syllabus 12 as follows:

"The wisdom, necessity or advisability of annexing territory to cities is not a matter for consideration by the courts. The basic function and duty of the court is to determine whether a city has statutory authority and whether it has acted thereunder in passing an annexation ordinance."

The scope of review in Section 521 annexation proceedings is stated in this opinion. In neither type of proceeding have we adopted the "fairly debatable" rule.

The City of Lenexa first made a legislative determination to annex the territory. The board of county commissioners then conducted a public hearing, with notice to all landowners concerned, and made its findings and order. Its action was both quasi-judicial and legislative. As we noted in *Board of Johnson County Comm'rs,* and as stated earlier in this opinion, a board of

county commissioners in carrying out its function of determining the advisability of the annexation is, at least in part, carrying out legislative functions, and in so doing has an obligation to see that the rights of the public are protected. The board of county commissioners is not bound to defer to the governing body of a city; it must make its own legislative determination of advisability based upon the evidence before it, its knowledge of the area, and other information which it possesses.

Legislative findings and determinations of municipal governing bodies are entitled to great deference in the courts. This applies equally to determinations by the governing bodies of a city and of a county. If the municipal government acted within the confines of the applicable statutes, the action must be upheld.

As we noted earlier, the Board's determination on the question of manifest injury is a quasi-judicial decision. This court's review of that decision is governed by the three-part test stated earlier in this opinion. The "fairly debatable" rule exists in Missouri to protect the integrity of legislative decisions. We do not find it applicable to the review of a quasi-judicial determination. We decline to adopt the "fairly debatable" rule as a guide to review of either a legislative or quasi-judicial determination under K.S.A. 12-521. We find no misapplication of the rule in the proceedings below.

IV. Is the determination of the Board of County Commissioners of manifest injury arbitrary and capricious, not supported by substantial evidence, and beyond the scope of the Board's authority?

The City in effect argues all three parts of the three-point test of *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828 (1968), stated earlier in this opinion. We will first consider whether the Board's order is arbitrary or capricious.

Arbitrary, oppressive or capricious conduct is said to be shown " 'where an order of an administrative tribunal is based upon findings which are not substantially supported by evidence in the record.' " *U.S.D. No. 461 v. Dice,* 228 Kan. 40, 50, 612 P.2d 1203 (1980). "Substantial evidence" is defined as "that which possesses relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved." *Brinson v. School District,* 223 Kan. 465, 473, 576 P.2d 602 (1978). Thus the first two prongs of the test merge, and we move on to the

determination of whether the Board's finding that the proposed annexation would cause manifest injury was supported by substantial evidence.

The term "manifest injury" has not been previously defined in our opinions. The Supreme Court of Kentucky, in *Masonic Widows and Orphans Hm. v. City of L'ville,* 309 Ky. 532, 539-40, 217 S.W.2d 815 (1949), said:

"The term 'manifest injury' means the clear and obvious imposition of material or substantial burdens upon the owners of the property as a class or the majority of them. City of Louisville v. Sullivan, [302 Ky. 86, 193 S.W.2d 1017]. The situation and conditions are to be considered from the standpoint of the whole—the city as an organized community and the suburban property as an unorganized community. It is to the interest of the city showing growth and expansion, particularly of a movement or trend of development, not to be placed in a straitjacket. Nor is it reasonable or fair that property enjoying substantial city conveniences, facilities and advantages should remain without and not be made a part of the municipality and subject to the power of the government in sustaining peace and order and fire protection. The over-all character of the property, its use and adaptability or capacity of being absorbed into the city are to be regarded. City of Russell v. Ironton-Russell Bridge Co., 249 Ky. 307, 60 S.W.2d 628. This embraces the consideration of density of population and the extent of urban development. The view to be taken is of the entire area and not the separate parcels of real estate in isolation. It is not the individual burdens or the wishes of the individual owners, although, of course, what affects the individual affects the whole. There is no more material factor—whether present or absent—than that the area and its inhabitants have in fact the use and benefit of city conveniences and facilities without contribution to the expense (City of Georgetown v. Pullen, 187 Ky. 697, 220 S.W. 733) though this of itself is not sufficient to warrant annexation. City of Lexington v. Rankin, 278 Ky. 388, 128 S.W.2d 710."

As the term "manifest injury" is used in our statute, it implies imposition of material or substantial burdens upon the landowners without accompanying material or substantial compensating benefits.

It is not the function of an appellate court to reweigh the evidence; we are concerned only with the evidence which supports the findings below, and not the evidence which might have supported contrary conclusions. See *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, Syl. ¶ 1, 531 P.2d 428 (1975). Substantial evidence is "that which possesses relevance and substance and which furnishes a substantial basis of fact from which the issue can reasonably be resolved." *Brinson v. School District,* 223 Kan. at 473; *Kelly v. Kansas City, Kansas Commu-*

*nity College,* 231 Kan. 751, 755, 648 P.2d 225 (1982). If there is such evidence in the record, we need look no further.

Briefly, the evidence and inferences therefrom which are supportive of the Board's finding of manifest injury are as follows. Obviously, taxes upon the land would increase substantially. Lenexa would not furnish sewers, electricity, lights and gas; these services are already being furnished by other governmental agencies and would continue to be so furnished. Fire protection would be furnished by the City; however, there is no indication that it would be equal to that presently furnished by the Monticello Fire Department, which has two specially equipped vehicles designed for use in rural areas. The City would furnish ambulance service; however, loss of the present service furnished by the Monticello Rescue Squad and replacement by Lenexa-based service would increase the distance of the ambulance base from residents of this area. Annexation of the entire twenty square mile territory by the City would so decrease the tax base that the Monticello Fire Department and Rescue Squad might well be lost, to the detriment of the public now served by those entities. Since the City was seeking authority to annex the entire area, there was no evidence of the effect of the tax base reduction if only the east half of the territory is annexed, and we will not speculate as to that matter. The City plans to extend police protection to the entire area without additional personnel; it is building or has now completed an adequate building, conveniently situated, to serve the City in its expanded state. How the present personnel can effectively patrol and serve over twice the present area, however, was not explained. Finally, the City proposes to maintain the streets and highways, but the evidence does not indicate that the service provided would be equal or superior to that presently provided with county personnel and equipment. Without detailing the evidence further, we conclude that it is adequate to support the finding of the Board of manifest injury.

Lenexa maintains that the Board's order was outside the scope of its authority. It contends that the Board considered evidence other than that bearing upon manifest injury to the landowners. As we have stated, the Board was acting partly in a legislative capacity in determining the advisability of the annexation. It could and should consider the effect of the proposed action upon residents other than those within the target area, *i.e.,* upon the public generally. The Board, in its written order, noted many

factors which it considered. The fact that the Board considered evidence which appellant contends was not relevant is immaterial, since there was substantial relevant evidence to support the Board's finding. The Board's action was entirely within the scope of its authority.

Lenexa complains that the Board's order is not sufficiently specific, and that the order fails to reveal precisely what evidence the Board considered in arriving at its conclusion that the annexation would cause manifest injury to the landowners. In this regard, the following portion of our opinion in *Kansas State Board of Healing Arts v. Acker,* 228 Kan. 145, 153, 612 P.2d 610 (1980), is relevant:

"Detailed findings of fact and conclusions are certainly recommended and are of great help to the trial court and appellate court in reviewing administrative decisions. See *Blue Cross & Blue Shield v. Bell,* 227 Kan. 426, 607 P.2d 498 (1980). However, we have held:

" 'Specific findings of fact by an administrative agency are desirable in contested matters, but are not indispensable to a valid decision in the absence of a statute or rule requiring them.' *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.,* 217 Kan. 546, Syl. ¶ 9, 539 P.2d 1 (1975)."

K.S.A. 12-521 does not require the board of county commissioners to make detailed findings of fact and conclusions of law. The Board's findings indicate only that it accepted the substantial evidence before it indicating that the proposed annexation would cause manifest injury to the landowners, and it rejected the City's evidence to the contrary. The Board also noted many of the factors considered in reaching its decision. The order appears to meet the requirements of the statute and is sufficient to allow judicial review.

V. Did the trial court err in taking judicial notice of facts, and in using those facts to support its affirmance of the Board's decision?

The trial judge took judicial notice of a number of items, including a map of Johnson County Water District No. 3, the mill levy rates for various Johnson County taxing districts, and various resolutions, maps, and bond issues of the City, county, and Monticello Township. Obviously, most of these matters were within the knowledge of the Board of County Commissioners, and could well have been considered by the Board as a basis for its determination of the advisability of the annexation. These items were not a part of the evidence offered at the hearing before

the Board, and cannot now be considered in reviewing the Board's finding on the issue of manifest injury. However, since we have concluded that there was substantial competent evidence *before the Board* to support that finding, any error of the trial court in taking judicial notice of those matters is at most harmless error.

VI. Did the trial court err in holding that the City of Lenexa attempted to annex a part of the City of Olathe, contrary to K.S.A. 12-524?

The trial court, in its conclusion of law No. 14, quoted above, noted that Lenexa was attempting, by its petition in this action, to annex a part of the City of Olathe, and it then reasoned that it could not find the Board's order to be in error in denying the proposed annexation. Appellant points out that the validity of the Olathe procedures in annexing the disputed tracts is in issue in a companion case, *City of Lenexa v. City of Olathe,* Johnson County Case No. 84,833; and see *City of Lenexa v. City of Olathe,* 228 Kan. 773, 620 P.2d 1153 (1980), *rev'd on rehearing* 229 Kan. 391, 625 P.2d 423 (1981). The issue of the validity of the Olathe annexation was not properly before the court in this case, but this error does not alter our conclusion that the Board's decision was supported by substantial, competent evidence. Again, any error in this finding is harmless.

VII. Is K.S.A. 12-521 unconstitutional as violative of the due process clause of the Fourteenth Amendment?

One of the appellees attacks this statute, asserting that it violates the due process clause because it does not provide for notice to all concerned landowners when an appeal is taken to the district court. This issue is not properly before this court on appeal for the reason that it was not raised in or presented to the trial court. Ordinarily, an issue cannot be raised for the first time on appeal. *Boswell, Inc. d/b/a Reno County Adult Care Home v. Harkins,* 230 Kan. 610, 613, 640 P.2d 1202 (1982). We see no reason to make an exception to the rule in this case. At any rate, the matter would appear to be controlled by our opinion in *State, ex rel., v. City of Overland Park,* 215 Kan. 700, 704-705, 527 P.2d 1340 (1974), where Justice Fontron, speaking for a unanimous court, said:

"Many years ago, in *Callen v. Junction City,* 43 Kan. 627, 23 Pac. 652, this court expressed itself this way on the subject:

" '. . . [T]he change of the *status* of a tract of land from a farm to city lots, by the exercise of a power granted cities to extend their limits, is not a deprivation of property without due process of law. . . .' (p. 630.)

"The *Callen* case reflects the generally prevailing rule in this country. In an annotation appearing in 64 A.L.R., Municipal Boundaries—Power to Extend, p. 1335, *et seq.,* numerous authorities are cited at pages 1358 to 1364 supporting the proposition that acts taken extending municipal boundaries are not unconstitutional in the sense of depriving the people in the areas annexed of their property without due process of law.

"Perhaps as clear a statement of this point of view as may be found was expressed by the Kentucky Supreme Court in *Lenox Land Co. v. City of Oakdale,* 137 Ky. 484, 489, 125 S.W. 1089, 1091:

" '. . . [I]t has been repeatedly announced, by this court and others, that the question of due process of law or the taking of property without compensation has no application to the annexation of territory to a municipality. The extension or reduction of the boundaries of a city or town is held, without exception, to be purely a political matter, entirely within the power of the Legislature of the state to regulate. The established doctrine is that the state Legislature has the unlimited right to pass such laws for the annexation of territory to municipal corporations as in its judgment will best accomplish the desired end, and that a different method may be provided for each class. It may, if it chooses, direct that notice shall be given personally to each individual owner of property sought to be annexed, or that notice by publication shall be given, or that notice by posting copies of the ordinance at any place shall be sufficient, or it may provide that no notice at all need be given. In short, the manner of annexation is entirely beyond the power of the courts to control if the provisions of the statute are followed. . . .' (p. 489.)"

We have carefully considered each of the issues raised, whether or not specifically addressed in this opinion, and we find no reversible error.

The judgment is affirmed.