No. 59,860

IN RE THE PETITION OF THE CITY OF OVERLAND PARK FOR THE ANNEX-
ATION OF LAND.

(736 P.2d 923)

Opinion
filed May 1, 1987.

*Barry W. McCormick*, of Payne & Jones, Chartered, of Overland Park, argued the cause, and *L. Franklin Taylor*, of the same firm, was with him on the brief for appellant landowners.

*Neil R. Shortlidge*, of Freilich, Leitner, Carlisle, & Shortlidge, of Overland Park, argued the cause, and *Robert J. Watson*, city attorney, was with him on the brief for appellee City of Overland Park.

*James M. Kaup*, of Topeka, was on the brief for *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

HOLMES, J.: Several Johnson County property owners appeal

from an order of the district court affirming action by the Board of County Commissioners of Johnson County (Board), which authorized the annexation of a 7.8 square mile area by the City of Overland Park (Overland Park or the City). The action was originally instituted by Overland Park pursuant to K.S.A. 12-521. Overland Park was allowed to intervene as a party in the district court and is the appellee in this court. This case was transferred from the Court of Appeals upon motion pursuant to K.S.A. 20-3017.

On May 1, 1985, Overland Park filed its petition for annexation. On May 23, 1985, city officials conducted a public meeting to explain the annexation. Public hearings were held by the Board on July 9, 1985, and July 23, 1985. On August 8, 1985, the Board filed an order authorizing annexation of the entire 7.8 square mile area with the exception of one 40-acre tract which the Board found would suffer manifest injury. The property owners have appealed asserting three issues: (1) The City of Overland Park was required to exhaust its ability to annex pursuant to K.S.A. 1986 Supp. 12-520 before petitioning under K.S.A. 12-521; (2) the Board failed to conduct a fair and open hearing, resulting in a denial of procedural due process of law; and (3) the Board improperly determined that annexation would not cause manifest injury.

First, the petitioners argue that the City was required to exhaust its ability to annex the land pursuant to K.S.A. 1986 Supp. 12-520 before it could petition the Board for annexation pursuant to K.S.A. 12-521. K.S.A. 12-520 was amended in 1986 after these annexation proceedings were completed, however, the amendments are immaterial to our discussion of this statute in this case. (L. 1986, ch. 70, § 2.) Hereinafter we will refer to the statutes simply as 12-520 and 12-521.

The two statutes provide different methods of annexation. Under 12-520, a city may unilaterally annex land if it meets any of seven criteria set forth in the statute. Procedurally, among other things, the city adopts a resolution regarding the contemplated annexation, gives notice of a public hearing to be held on the annexation, and mails a copy of the resolution providing for a public hearing by certified mail to property owners of property to be annexed. Following the hearing, the city effects annexation

by passing and publishing an annexation ordinance covering the land in question. K.S.A. 1986 Supp. 12-520a

When proceeding under 12-521, the city presents a petition to the board of county commissioners of the county where the land sought to be annexed is located. Again, a public hearing is required and a copy of the notice providing for the public hearing is mailed by certified mail to owners of property to be annexed. However, it is the board of county commissioners which determines whether to grant the annexation and, to do so, it must find that the annexation will cause no manifest injury to the property owners. If the board grants the annexation, the city then must pass and publish an annexation ordinance covering the land in question. Thus, it is obvious that the procedure under 12-520 is much simpler and more direct from the city's standpoint.

K.S.A. 12-521 provides in part:

"Whenever the governing body of any city deems it advisable to annex land *which such city is not permitted to annex under the authority of K.S.A. 12-520 and amendments thereto,* the governing body in the name of the city may present a petition to the board of county commissioners of the county in which the land sought to be annexed is located." (Emphasis added.)

The appellants argue that the quoted language required the City to first unilaterally annex all property in the 7.8 square mile area which met any of the criteria of 12-520 and, therefore, the 12-521 petition is defective. While the record is not clear, we will accept, for purposes of this decision, that there were several areas within the 7.8 square miles which could have been annexed under 12-520. The district court stated in its opinion that, "[a]lthough there was no direct testimony or evidence presented to the court which would support the contention that there was K.S.A. 12-520 eligible land in the annexation request, a perusal of the maps provided would seem to substantiate that contention." Our examination of the maps which were part of the record before the Board leads us to the same conclusion.

The City argues the district court correctly decided that a city is not required to exhaust all possible unilateral annexations pursuant to 12-520 before petitioning the board of county commissioners for a 12-521 annexation. The district court found the entire 7.8 square mile area could not be annexed under 12-520,

so the City could elect to proceed under 12-521, which provided the property owners with additional safeguards. Furthermore, under the definitions of "land" and "tract" in K.S.A. 12-519(b) and -519(a), the district court found the use of the word "land" in 12-521 meant an area which consists of a number of units of real property under different ownership. Therefore, the court found it is the legal description of the entire area which must be ineligible for annexation under 12-520 as a condition precedent to use of 12-521. We agree.

No Kansas case has previously addressed an annexation involving 12-520 and 12-521 lands together in the same proceeding. However, there are cases where successive ordinances have been passed by the city to sequentially and unilaterally annex land in a piecemeal fashion pursuant to 12-520. See *McDowell v. City of Topeka*, 239 Kan. 263, 718 P.2d 1308 (1986); *Banzer v. City of Wichita*, 237 Kan. 798, 703 P.2d 812 (1985); *City of Lenexa v. City of Olathe*, 233 Kan. 159, 660 P.2d 1368 (1983); *State, ex rel., v. City of Overland Park*, 215 Kan. 700, 527 P.2d 1340 (1974). Under the typical procedure used in these cases, land that meets 12-520 criteria is unilaterally annexed by passing an ordinance. After that ordinance is published and effective, unilateral annexation proceedings are begun to annex an area of land that can then be reached by 12-520 due to the first annexation. Each subsequent annexation depends on the validity of the preceding annexation. Thus, over a period of time, a city can unilaterally bootstrap in a large area of land, which, in its entirety, did not initially meet the criteria of 12-520. The procedure is time consuming, expensive, and not without serious problems. In *Banzer v. City of Wichita*, 237 Kan. 798, ten parcels of land were sequentially annexed by the City of Wichita, pursuant to 12-520, based upon one initial resolution. The City gave the requisite notice of public hearing, which included a copy of the one resolution covering the entire land to be annexed, to the property owners. Following only one public hearing which covered all ten parcels, the City proceeded in a weekly sequential manner to adopt the ten successive annexation ordinances annexing the whole of the territory. Each succeeding ordinance was dependent upon the validity of the annexation ordinance immediately preceding it. In the opinion we stated:

"It is clear that the language of K.S.A. 12-520 does not provide a method for a municipality to use multiple sequential annexation ordinances for tracts of land that do not adjoin the city when the annexation procedure is commenced. For a municipality to annex land under K.S.A. 12-520(a), such land must actually adjoin the city when the annexation procedure is commenced." 237 Kan. at 805.

The first parcel of land was held to be properly annexed; the annexation of the remaining nine, however, was ruled ineffective because they did not adjoin the City when the annexation proceedings were commenced as required by 12-520(a), under which the City had proceeded.

In *Board of Riley County Comm'rs v. City of Junction City*, 233 Kan. 947, 667 P.2d 868 (1983), this court ruled the entire annexation ordinance passed by a city was invalid where that ordinance described the land in question in one parcel and only part of that parcel was lawfully subject to annexation. However, pursuant to the specific provisions of 12-520, if one ordinance is used and it describes each separate parcel involved, and one of those parcels does not meet the statutory criteria, the annexation of the remaining parcels which do meet the criteria is not invalidated.

The first time K.S.A. 12-519 *et seq.* were considered by this court was in *State, ex rel. v. City of Coffeyville*, 211 Kan. 746, 749, 508 P.2d 1007 (1973), where it was stated regarding 12-520:

"The proviso that a city by one ordinance may annex one or more separate tracts or lands each of which conforms to any one of the prescribed conditions for annexation (last paragraph of 12-520), permits consolidation of separate annexations in one procedure, thereby saving time and expense. *The procedure is permissive but is not intended to permit annexation of any lands which depend on the completion of other pending annexations before the conditions for annexation exist* . . . . These views appear harmonious with the statutory language and worthy of consideration as reflection of legislative intent." (Emphasis added.)

Thus, it is clear that when considering annexation of an area which includes only 12-520 land, that land must meet the statutory qualifications on the date the annexation proceedings are begun. Here, the concern involves some land that may satisfy the 12-520 requirements and some land that clearly does not. There is nothing in the statutes to indicate that in such an instance 12-520 and 12-521 are mutually exclusive and that annexation of the entire area cannot be brought pursuant to 12-521. K.S.A.

12-521 affords the property owners considerably more protection than unilateral annexation under 12-520. Pursuant to 12-521, it is the board of county commissioners who must decide if the annexation is advisable and it must find the property owners will not suffer manifest injury by the annexation. Additionally, a more comprehensive approach to land development is allowed when the entire territory comprised of 12-520 and 12-521 land can be considered together in one proceeding. Such a process can save time and expense while affording the property owners more protection. It is also clear that in many cases the initial annexations under 12-520 may result in additional property becoming eligible under the statute and, under the appellants' theory, the city would then be required to again proceed on a piecemeal basis as to the new 12-520 property. We conclude the City was not required to first exhaust annexation proceedings pursuant to 12-520 before petitioning the Board pursuant to 12-521.

Next, appellants assert they did not receive procedural due process in the proceedings before the Board. They argue their rights were violated when the Board allowed only six hours for hearings on the annexation and failed to allow the appellants to cross-examine witnesses.

When a board of county commissioners carries out its functions under 12-521, it has two roles: It acts in a legislative capacity when it determines the advisability of annexation, and it acts in a quasi-judicial capacity when it determines whether the annexation will cause manifest injury. *In re Appeal of City of Lenexa*, 232 Kan. 568, Syl. ¶ 1, 657 P.2d 47 (1983). However, the full rights of due process present in a court of law do not automatically attach to a quasi-judicial hearing. See *Goss v. Lopez*, 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729 (1975). The concept of due process is flexible in that "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). The basic elements of procedural due process of law are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *U.S.D. No. 461 v. Dice*, 228 Kan. 40, Syl. ¶ 1, 612 P.2d 1203 (1980). In the early case of *Callen v. Junction City*, 43 Kan. 627, 23 Pac. 652 (1890), an attack on the constitutionality of certain annexation proceedings was

asserted, including a claim that the statutes authorizing annexation violated the requirements of due process of law. The court stated:

"[I]t is only necessary to say that the change of the *status* of a tract of land from a farm to city lots, by the exercise of a power granted cities to extend their limits, is not a deprivation of property without due process of law." p. 630.

*Callen* was cited with approval in *State, ex rel., v. City of Overland Park*, 215 Kan. 700. Be that as it may, in the present case every landowner who wished to be heard was given an opportunity to present his or her views at one of the two hearings and, in fact, the landowners who were protesting this annexation utilized the major portion of the six hours of hearings on the matter.

Here, the appellants' rights to procedural due process were not violated because they were not allowed to cross-examine witnesses. Statements at an annexation hearing are not made under oath but are generally broad expressions of opinion made by those in favor of or against the annexation. To allow cross-examination in contested annexation proceedings where the number of property owners who express their views is likely to be great would result in increased time, expense, and delay to all parties concerned. The proceeding could degenerate into utter chaos. The appellants were given the opportunity to present written questions to the City and its witnesses after the first hearing, all of which were considered by the Board. We conclude the appellants were afforded a hearing which was fair, open, and impartial, and the decision of the Board met the requirements of procedural due process. *Suburban Medical Center v. Olathe Community Hosp.*, 226 Kan. 320, 597 P.2d 654 (1979).

The appellants also argue their due process rights were violated by ex parte communications between the City and the Board after the close of the hearings. The ex parte communications of which the appellants complain consist of letters exchanged between the Board and the City concerning the minimum lot size for septic tank purposes, a letter containing a copy of an editorial on the annexation from a local paper, and a phone call between the mayor and a commissioner prior to the inception of the annexation proceeding.

The Board set July 29, 1985, as the deadline for the submission

of evidence. Two letters of which the appellants complain, a letter from Mayor Eilert amplifying his comments from the hearings, and a letter to the Board which enclosed an editorial from a local paper, were discovered by appellants, according to their brief, on July 26, 1985. Therefore, appellants had time to respond in kind to the Board by the July 29 deadline. Additionally, the subject matter of certain letters complained of was the City's five-acre minimum lot size for septic tank purposes, which was raised and objected to by appellants at the first hearing before the Board. This was not a new issue but had been addressed by the mayor at the public hearings, with the appellants present, where he indicated a study on the feasibility of amending the five-acre minimum would be performed in order to satisfy appellants' objections. Such communications resemble "status reports" rather than attempts by an interested party to unduly influence a commissioner. See *Raz Inland Navigation Co., Inc. v. I.C.C.*, 625 F.2d 258 (9th Cir. 1980). Finally, the telephone conversation between one commissioner and the mayor prior to the beginning of the annexation proceeding, appears to have been a courtesy call to inform the county commissioner from the district wherein the land was located of the City's annexation intentions, and there is no indication the context of the conversation was intended to, or did, influence the Board's actions. The district court properly concluded the ex parte communications and lack of cross-examination did not violate the appellants' due process rights. We also note that numerous ex parte communications were received by the Board or its individual members from several landowners.

Finally, the appellants argue the district court improperly upheld the Board's determination that the annexation of the area would not cause manifest injury to the property owners of the land being annexed.

*In re Appeal of City of Lenexa*, 232 Kan. at 575-76, set forth the scope of judicial review in a 12-521 appeal. In that case it was stated:

"[W]hen a district court is called upon to review the action of the board in determining the judicial issue of manifest injury, the reviewing court is limited to considering whether, as a matter of law, (1) the board acted fraudulently, arbitrarily, or capriciously, (2) the board's order is supported by substantial

evidence, and (3) the board's action was within the scope of its authority. See *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P.2d 828 (1968); *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.*, 217 Kan. 546, 539 P.2d 1 (1975). In reviewing the district court's judgment, this court must first determine whether the district court observed the requirements and restrictions placed upon it, and then make the same review of the Board's action as does the district court. *Kansas Dept. of Health & Environment v. Banks*, 230 Kan. 169, 172, 630 P.2d 1131 (1981)."

The term "manifest injury" was first defined by this court in *City of Lenexa* as the "imposition of material or substantial burdens upon the landowners without accompanying material or substantial compensating benefits." 232 Kan. at 584. For the Board to have acted arbitrarily and capriciously in finding no manifest injury, there must be a lack of substantial evidence supporting its action. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. It is not the function of the appellate court to reweigh the evidence; this court is concerned only with the evidence which supports the findings below, and not the evidence which might have supported contrary conclusions. If there is substantial evidence in the record to support the Board's determination of no manifest injury, that decision must be affirmed and the annexation allowed. *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. 1, 21, 687 P.2d 603 (1984).

Without going into detail, there is substantial evidence in the voluminous record before this court from which the Board could, and did, find that the annexation would not result in manifest injury to the landowners and appellants herein.

After detailing the evidence and findings in his memorandum opinion, the trial judge stated:

"The Court will, therefore, find when the possible benefits and liabilities of annexation are weighed that the Board's finding of a lack of manifest injury was supported by substantial evidence."

We agree with the trial court.

No error having been shown, the judgment is affirmed.